[Cite as *Wright v. Wright*, 2013-Ohio-4138.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| LEESA LLOYD WRIGHT | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellant | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 2012CA00232 |
| | : | |
| STEVEN WRIGHT | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Stark County Court of
                             Common Pleas, Domestic Relations
                             Division, Case No. 2004DR01383



JUDGMENT:                    AFFIRMED



DATE OF JUDGMENT ENTRY:      September 9, 2013



APPEARANCES:

For Plaintiff-Appellant:                 For Defendant-Appellee:

PAMELLA A. LAMMON                        JENNIFER LOWRY-JUERGENSEN
103 N. Union St., Suite D                116 Cleveland Ave. SW, Suite 800
Delaware, OH 43015                       Canton, OH 44702

*Delaney, J.*

{¶1} Plaintiff-Appellant Leesa Lloyd Wright appeals the November 14, 2012 judgment entry of the Stark County Court of Common Pleas, Domestic Relations Division.

## FACTS AND PROCEDURAL HISTORY

{¶2} On June 22, 2005, Plaintiff-Appellant Leesa Lloyd Wright ("Mother") and Defendant-Appellee Steven Wright ("Father") were granted a divorce. The final decree incorporated the parties' separation agreement wherein the parties agreed to a shared parenting plan regarding their child, E.W., born as issue of the marriage on July 31, 2002. Mother was designated the residential parent and legal custodian.

{¶3} On January 8, 2009, the parties entered into another shared parenting agreement wherein Father was designated the residential parent for school placement purposes and medical decisions.

{¶4} In September 2009, Mother and Father filed separate motions for the reallocation of parental rights and responsibilities. Hearings were held before the magistrate. By decision filed August 3, 2010, the magistrate terminated the shared parenting plan, designated Father as the residential parent and legal custodian, and ordered Mother to pay child support in the amount of $50.00 per month. Mother filed objections. A hearing was held on March 30, 2011. By judgment entry filed April 18, 2011, the trial court ordered a limited remand to address the issues of child support, health care, and the allocation of the dependency exemption. After a hearing, the magistrate issued a decision on those issues on May 5, 2011. The trial court overruled Mother's objections, approved, and adopted the magistrate's decision on May 9, 2011.

The trial court filed findings of fact and conclusions of law and issued a final order on May 16, 2011.

{¶5}   Mother filed an appeal of the May 16, 2011 judgment entry with this Court. Mother filed a motion to stay judgment, which the trial court denied on June 13, 2011. In *Wright v. Wright*, 5th Dist. Stark No. 2011CA00129, 2012-Ohio-1560 ("*Wright I*"), we reversed the decision of the trial court and remanded the matter for further consideration.   We found the trial court was precluded from terminating a shared parenting plan and designating Father as the residential parent and legal custodian without first making a determination that a change in circumstances had occurred, as well as a finding that a modification was in the best interest of the child.

{¶6}   Upon remand, the trial court reappointed the Guardian ad Litem to update his report because of the passage of time.  The Guardian ad Litem recommended the trial court terminate the shared parenting plan and award custody to Father.  The trial court held a limited evidentiary hearing on October 11, 2012.  The trial court held an in camera interview with E.W.

{¶7}   On November 4, 2012, the trial court issued its Findings of Fact and Conclusions of Law and judgment entry.   The trial court based its decision on the evidence adduced at the first trial and second trial.  The trial court found five changes in circumstances had occurred since January 2009: (1) the parents acknowledged the shared parenting plan was not working; (2) Mother stopped using the computer program, "Our Family Wizard," to communicate with Father as to E.W.; (3) When E.W. entered first grade in August 2009, Mother created conflict with the school that could negatively impact E.W.'s education; (4) Mother failed to comply with the parenting time

provisions of the shared parenting plan; and (5) Mother changed E.W.'s name in Summit County Probate Court without the Father's knowledge. The trial court next found it was within the child's best interest that it terminate the shared parenting plan and name Father as the residential parent and legal custodian.

{¶8} It is from this decision Mother now appeals.

**ASSIGNMENTS OF ERROR**

{¶9} Mother raises five Assignments of Error:

{¶10} "I. THE TRIAL COURTS [SIC] DETERMINATION THAT A 'CHANGE IN CIRCUMSTANCES' HAS OCCURRED SINCE THE PARTIES WERE LAST IN COURT, AS WELL AS FINDING THAT THE MODIFICATION IS IN THE BEST INTEREST OF THE CHILD, PURSUANT TO R.C. 3109.04(E)(1)(a) WAS AN ABUSE OF DISCRETION AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. THE TRIAL COURTS' [SIC] DECISION IS NOT REFLECTED IN THE TRANSCRIPT.

{¶11} "II. THE TRIAL COURT ABUSED ITS' [SIC] DISCRETION WHEN IT PROCEEDED WITHOUT REMOVING AND REPLACING THE GUARDIAN AD LITEM, IF THE GUARDIAN AD LITEM DID NOT COMPLY WITH THE MINIMUM STANDARDS OF PRACTICE, AS SET FORTH IN RULE 48 OF THE RULES OF SUPERINTENDENCE. MUST THE GUARDIAN AD LITEM INFORM THE COURT WHEN THERE IS A CONFLICT OF INTEREST BETWEEN WHAT A COMPETENT CHILD DESIRES AND THE GUARDIAN AD LITEM'S RECOMMENDATION? THE TRIAL COURT'S DECISION IS NOT REFLECTED IN THE TRANSCRIPT.

{¶12} "III. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DISREGARDED THE CHILD'S DESIRE TO LIVE WITH HIS MOTHER AND FAILED

TO APPOINT SEPARATE COUNSEL FOR THE CHILD, WHEN THE CHILD'S WISHES ARE IN CONFLICT WITH THE GUARDIAN AD LITEM'S RECOMMENDATION. THE TRIAL COURT'S DECISION IS NOT REFLECTED IN THE TRANSCRIPT.

{¶13} "IV. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT AFFIRMED THE MAGISTRATE'S DECISION OF 8/3/2010, WHICH WAS BASED LARGELY UPON THE GUARDIAN AD LITEM'S REPORT OF 1/13/2010, WHICH WAS IN TURN LARGELY BASED UPON INADMISSIBLE HEARSAY FROM A 2006 PSYCHOLOGICAL REPORT BY DR. TULLY. JUDGE JAMES INDICATES IN HIS 11/4/2012 JUDGMENT ENTRY THAT THIS REPORT SHOULD BE DISREGARD [SIC], HOWEVER IT IS CLEAR THAT THIS REPORT FORMED THE BASIS OF BOTH THE GUARDIAN AD LITEM'S MULTIPLE REPORTS OVER THE YEARS OF THIS CASE AND THE MAGISTRATE'S DECISION OF 8/3/2010. THE TRIAL COURT'S DECISION IS NOT REFLECTED IN THE TRANSCRIPT.

{¶14} "V. THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN IT TERMINATED THE SHARED PARENTING PLAN AND DESIGNATED THE DEFENDANT/APPELLEE THE RESIDENTIAL PARENT AND LEGAL CUSTODIAN OF THE PARTIES' MINOR CHILD. THE TRIAL COURT'S DECISION IS NOT REFLECTED IN THE TRANSCRIPT."

**ANALYSIS**

***I., V.***

{¶15} Mother argues in her first Assignment of Error the trial court abused its discretion in finding that a change of circumstances had occurred and it was in the best

interests of the child to modify the custody arrangement. Mother argues in the fifth Assignment of Error the decision to terminate the shared parenting plan and name Father as the residential parent and legal custodian was against the manifest weight of the evidence. We consider the first and fifth Assignments of Error together because they are interrelated.

*Standard of Review: Modification of Designation of Residential Parent and Legal Custodian*

{¶16} A trial court enjoys broad discretion in custody proceedings. *Cossin v. Holley,* 5th Dist. Morrow No. 2006 CA 0014, 2007–Ohio–5258, ¶ 28 citing *Davis v. Flickinger,* 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997), paragraph one of the syllabus. A trial court's decision to terminate a shared parenting plan is reviewed under an abuse of discretion standard. *In re J.L.R.,* 4th Dist. Washington No. 08CA17, 2009–Ohio–5812. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. *Myers v. Garson,* 66 Ohio St.3d 610, 614 N.E.2d 742, 1993–Ohio–9.

{¶17} R.C. 3109.04 governs modification of parental rights and responsibilities in a shared-parenting decree. *Fisher v. Hasenjager,* 116 Ohio St.3d 53, 2007–Ohio–5589, 876 N.E.2d 546, ¶ 11. Subsections (E)(2)(c) and (d) state:

(c) The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D)(1)(a)(i) of this section upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children. The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D)(1)(a)(ii) or (iii) of this section if it determines, upon its own motion or upon the request of one or both parents, that shared parenting is not in the best interest of the children. If modification of the terms of the plan for shared parenting approved by the court and incorporated by it into the final shared parenting decree is attempted under division (E)(2)(a) of this section and the court rejects the modifications, it may terminate the final shared parenting decree if it determines that shared parenting is not in the best interest of the children.

(d) Upon the termination of a prior final shared parenting decree under division (E)(2)(c) of this section, the court shall proceed and issue a modified decree for the allocation of parental rights and responsibilities for the care of the children under the standards applicable under divisions (A), (B), and (C) of this section as if no decree for shared parenting had been granted and as if no request for shared parenting ever had been made.

{¶18} We held in *Wright I* that pursuant to *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, if there is a change in designation of residential

parent and legal custodian of a child, the trial court is required to make a determination that a change in circumstances has occurred, as well as finding that a modification is in the best interest of the child, pursuant to R.C. 3109.05(E)(1)(a). *Wright I*, at ¶ 25 citing *Fisher*, at ¶ 37.

*Change in Circumstances*

{¶19} R.C. 3109.04(E)(1)(a) controls when a court modifies an order designating the residential parent and legal custodian. The statute requires a court to find a change in circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree before modifying a decree allocating parental rights and responsibilities.

{¶20} The trial court is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Therefore, deferential review in a child custody determination is especially crucial "where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 1997–Ohio–260, 674 N.E.2d 1159.

{¶21} R.C. 3109.04(E)(1)(a), provides, in pertinent part,

The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, [or] his residential parent, or either of the

parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. * * *

{¶22} "Although R.C. 3109.04 does not provide a definition of the phrase 'change in circumstances,' Ohio courts have held that the phrase is intended to denote 'an event, occurrence, or situation which has a material and adverse effect upon a child.'" *Lewis v. Lewis,* 12th Dist. Butler No. CA2001–09–209, 2002 WL 517991 (April 8, 2002), citing *Rohrbaugh v. Rohrbaugh,* 136 Ohio App.3d 599, 604–05, 737 N.E.2d 551 (7th Dist.2000). In order to warrant the abrupt disruption of the child's home life, the change in circumstances must be one "of substance, not a slight or inconsequential change." *Flickinger,* 77 Ohio St.3d at 418, 674 N.E.2d 1159. "The purpose of requiring a finding of a change in circumstances is to prevent a constant re-litigation of issues that have already been determined by the trial court. * * * Therefore, the modification must be based upon some fact that has arisen since the prior order or was unknown at the time of the prior order." *Brammer v. Brammer,* 194 Ohio App.3d 240, 955 N.E.2d 453, 2011–Ohio–2610, ¶ 17 (3rd Dist.), citing R.C. 3109.04(E)(1)(a).

{¶23} Moreover, and as stated by the Ohio Supreme Court, "a trial judge must have wide latitude in considering all the evidence" when making a determination of change of circumstances. *Flickinger,* 77 Ohio St.3d at 418, 674 N.E.2d 1159. If a court could not consider events as they continued to unfold once a custody motion is filed, the trial court would be perpetually re-addressing new filings alleging a change in circumstances due to the inevitable passage of time between the filing of the original custody motion and the date of the hearing on the motion. This barrier is meant to operate as the "domestic relations version of the doctrine of res judicata," and is meant

to prevent the "constant relitigation of the same issues" adjudicated in prior custody orders. *Perz v. Perz,* 85 Ohio App.3d 374, 376, 619 N.E.2d 1094 (1993).

{¶24} The original shared parenting plan adopted in January 2009 named Father as the residential parent for school purposes. It provided a rotating schedule aligned with Father's work schedule and a right of first refusal. By September 2009, Mother and Father had filed separate motions for reallocation of parental rights and responsibilities. In 2011, the trial court terminated the shared parenting plan. Father was named the residential parent and legal custodian. The parenting time was delineated by a Schedule A. The trial court denied a motion to stay while the termination of the shared parenting plan was appealed to this Court, so that the parties have been managing the custody arrangement pursuant to the trial court's order, rather than the shared parenting plan.

{¶25} Upon remand pursuant to *Wright I*, the trial court held a limited evidentiary hearing and reviewed the evidence from the previous hearing. The trial court determined the evidence showed five changes of circumstances. First, since the shared parenting plan was adopted in 2009, the parents both acknowledged the plan was unworkable. The trial court, Guardian ad Litem, and counsel have all described this case as a "high conflict case." In an attempt to reduce the conflict, the trial court ordered the parties to use the computer program, "Our Family Wizard," to aid in communication regarding E.W. The trial court found the evidence showed Mother stopped using the Family Wizard in February 2012, a second change in circumstances. A third change in circumstance was the contentious relationship between Mother and E.W.'s elementary school regarding the school's communication with Mother, which the

trial court held had the potential to negatively impact E.W.'s education. The school created a communication policy for students with custodial arrangements to accommodate the communication difficulties with Mother. The fourth change in circumstance involved the division of parenting time for Father and Mother over the Christmas holiday in 2009. Mother did not relinquish physical custody of E.W. to allow Father to have his scheduled time with E.W. The trial court found Mother's failure to comply with the parenting time provisions of the shared parenting plan to be a change of circumstance. Finally, it was determined that during the pendency of the case, Mother changed E.W.'s last name in the Summit County Probate Court without Father's knowledge. The order was reversed by the Summit County Probate Court upon the Father's motion.

{¶26} A review of the record and the Guardian ad Litem's reports shows this case is indeed a "high conflict case." Mother argues that while these events may have occurred, these events do not constitute changes in circumstances because they were not events, occurrences, or situations that have had a material and adverse effect upon E.W. Mother argues the evidence upon remand showed that E.W. was a happy and well-adjusted child. We note the shared parenting plan was terminated in 2011. Since 2011, the parties have been conducting their custodial arrangements with Father as the residential parent and legal custodian. The Guardian ad Litem's August 27, 2012 report noted the conflict he observed in 2011 had been resolved due to the trial court's previous orders and restrictions.

{¶27} Mother argues on appeal the trial court erred in finding there were changes of circumstances warranting a termination of the shared parenting plan.

Mother, however, originally filed a motion for reallocation of parental rights and responsibilities arguing change in circumstances. The record in this case supports the trial court's conclusion that substantial events have occurred that have or may have an adverse effect on E.W. We defer to the trial court's interpretation of the evidence as it observed first-hand the witnesses and their demeanor.

*Best Interest of the Children*

{¶28} If a change of circumstances is established, the trial court must weigh the best interest of the children before modifying a residential-parent designation. R.C. 3109.04(F) sets forth the factors a trial court must consider in determining the best interest of the child:

R.C. 3109.04(F)(1) requires the trial court consider all relevant factors. These factors include, but are not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child * * *;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

R.C. 3109.04(F)(1)(a)-(j).  Furthermore, in determining whether shared parenting is in the best interest of the child, the trial court shall also consider additional factors including, but not limited to:

(a) The ability of the parents to cooperate and make decisions jointly, with respect to the [child];

(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.

R.C. 3109.04(F)(2).

{¶29} The magistrate's original decision on August 3, 2010 considered the best interests of E.W. It weighed the factors and found it was in the best interests of E.W. that the shared parenting plan be terminated and Father named the residential parent and legal custodian. Upon remand, the trial court reviewed the original decision and modified it based on the passage of time. The trial court stated it would not consider as evidence a psychological evaluation performed six years ago. The trial court conducted an in camera interview with E.W., wherein the child stated he wished to reside with Mother and visit Father. The trial court found E.W. did not articulate a reason for his wishes. The Guardian ad Litem in this case repeatedly recommended through his reports and testimony that the shared parenting plan be terminated and custody be awarded to Father.

{¶30} We find no abuse of discretion in the trial court's conclusion that it is in the best interests of E.W. that Father is named the residential parent and legal custodian. The magistrate decision thoroughly analyzed the factors and the findings were supported by the record. The most significant factor in this case was the parents' inability to cooperate or make joint decisions for the benefit of E.W. The inability to make joint decisions ranged from E.W.'s education to E.W.'s health care. Further, the record supports the decision that Father would more likely facilitate the parenting time schedule, based on Mother's previous denial of Father's parenting time.

*Manifest Weight*

{¶31} Mother argues the decision was against the manifest weight of the evidence. A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. *Myers v. Garson,* 66 Ohio St.3d 610, 1993–Ohio–9,614 N.E.2d 742.

{¶32} We have reviewed the record and based on our findings above, we find the decision to terminate the shared parenting plan was supported by competent and credible evidence.

{¶33} Mother's first and fifth Assignments of Error are overruled.

*II.*

{¶34} Mother argues in her second Assignment of Error the trial court abused its discretion when it failed to remove the Guardian ad Litem for E.W. based on the GAL's failure to comply with Sup.R. 48. We disagree.

{¶35} Sup.R. 48 governs guardian ad litem standards in Ohio and sets statewide standards regarding the appointment, responsibilities, training and reporting requirements of guardians ad litem. Mother argues the GAL failed to meet the minimum standards set forth by Sup.R. 48 and his evidence should not be considered by the trial court.

{¶36} The GAL was originally appointed on November 11, 2004. The trial court reappointed the GAL on September 30, 2008, September 23, 2009, and May 8, 2012. The GAL filed reports on March 28, 2005, January 5, 2009, January 11, 2010, May 3,

2012, and August 27, 2012. The reports outline the individuals the GAL interviewed including Mother, Father, E.W., and school employees and the records the GAL reviewed such as the school records, medical records, police records, Summit County Probate Court records, emails, Family Wizard, and tape recordings. Based on his investigation, the GAL repeatedly concluded the shared parenting plan should be terminated.

{¶37} The record shows the GAL complied with the requirements of Sup.R. 48 during the pendency of this case. We find no abuse of discretion for the trial court to deny the motion to remove the GAL.

{¶38} Mother's second Assignment of Error is overruled.

*III.*

{¶39} Mother argues in her third Assignment of Error the trial court erred in failing to appoint a separate attorney for E.W. because the child expressed different wishes for his custodial arrangement than that recommended by the Guardian ad Litem.

{¶40} On August 28, 2012, Mother filed a motion for separate legal counsel to be appointed for E.W. She argued pursuant to Sup.R. 48 and Civ.R. 75, the trial court should appoint separate legal counsel for the child when the child's wishes conflict with the GAL's recommendation for custody. The trial court denied the motion on September 19, 2012.

{¶41} Sup.48(D)(8) states: "When a guardian ad litem determines that a conflict exists between the child's best interest and the child's wishes, the guardian ad litem shall, at the earliest practical time, request in writing that the court promptly resolve the conflict by entering appropriate orders." The GAL reported in his August 27, 2012

updated GAL report that E.W. stated a preference for spending more time with Mother. He said he was bored at Father's home and enjoyed seeing his older sister (who lives with Mother). At the time of the GAL interview, E.W. was 10 years old. At the October 11, 2012 trial, the GAL testified:

Q. [E.W.] has expressed to you that…his desires are contrary to what your report recommends, has he not?

A. He has expressed inconsistent desires to me.

Q. (Agreeing). His most recent desire expressed to you, since the time the trial ended, is inconsistent with your report, is it not?

A. He has expressed …

Q. The answer is yes or no.

A. Inconsistent preferences. So, no matter what I recommend, he would have some expression of opinion or preference that would be inconsistent. It would be impossible to have a recommendation to the Court, that would be consistent with the opinion [E.W.] expressed to me.

Q. So, you don't, do you believe there's a conflict with, between um…what you recommend and what [E.W.] wants?

A. No, I don't.

(October 11, 2012 Hearing, T. 35-36).

{¶42} The trial court conducted an in camera interview with E.W. In its November 14, 2012 judgment entry, the trial court found: "The Court has also considered the wishes of the child as expressed in the in-camera interview and found

him to be competent to express his wishes. [E.W.] expressed a desire to reside with his mother and visit his father. [E.W.] was unable to articulate the reasons for his wishes."

{¶43} Courts should make a determination, on a case-by-case basis, whether the child actually needs independent counsel, taking into account the maturity of the child and the possibility of the child's guardian ad litem being appointed to represent the child. *In re Williams,* 101 Ohio St.3d 398, 2004–Ohio–1500, 805 N.E., 2d 1110. In this case, the GAL did not feel there was a conflict between what E.W. desired and the GAL recommended. The GAL had been with E.W. since 2004 and was knowledgeable of the history of the case. The trial court confirmed the GAL's recommendation with his separate in camera interview with E.W. Considering the age of E.W. at the time he stated his preference and the history of this case, we find no abuse of discretion in denying the motion for appointment of separate counsel.

{¶44} Mother's third Assignment of Error is overruled.

*IV.*

{¶45} Mother asserts in her fourth Assignment of Error that the trial court erroneously considered the 2006 psychological evaluation of the family by Dr. Tully when making its decision to terminate the shared parenting plan. We disagree.

{¶46} The trial court's November 14, 2012 judgment entry stated:

The findings of fact issued in the Magistrate's Decision are approved, adopted and incorporated herein with two exceptions. The court finds that any reference or reliance upon Dr. Tully's psychological evaluation performed six years ago should be disregarded in that it is not in evidence at this time. * * *

{¶47} The trial court was required not only to consider the best interests of the child in making its decision to terminate the shared parenting plan, but also whether there was a change in circumstances.   The change in circumstances evidence presented to the trial court occurred after the 2006 psychological examination.   This Court has recently held in *Nicely v. Weaver*, 5th Dist. Stark No. 2012 CA 00134, 2013-Ohio-1621, ¶ 22, "* * * in a bench trial, a trial court judge is presumed to know the applicable law and apply it accordingly. *Walczak v. Walczak,* Stark App.No.2003CA00298, 2004–Ohio–3370, ¶ 22, citing *State v. Eley* (1996), 77 Ohio St.3d 174, 180–181, 672 N.E.2d 640.  In this instance, the trial court is thus afforded the presumption that it was capable of distinguishing the pre–2007 foundational information from the main body of evidence in reaching its decision."

{¶48} We likewise afford the trial court the presumption that it did not consider the 2006 psychological examination in making its decision.

{¶49} Mother's fourth Assignment of Error is overruled.

**CONCLUSION**

{¶50} Based on the above findings, the five Assignments of Error of Plaintiff-Appellant Leesa Lloyd Wright are overruled.

{¶51} The judgment of the Stark County Court of Common Pleas, Domestic Relations Division is affirmed.

By: Delaney, J.,

Hoffman, P.J. and

Farmer, J., concur.

_____
HON. PATRICIA A. DELANEY

_____
HON. WILLIAM B. HOFFMAN

_____
HON. SHEILA G. FARMER