[Cite as *Thompson v. Thompson*, 2019-Ohio-274.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| MELISSA THOMPSON | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellant | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | Case No. 2018CA00074 |
| | : | |
| ERIC THOMPSON | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:            Appeal from the Stark County Court of
                                    Common Pleas, Domestic Relations
                                    Division Case No. 2009 DR 736

JUDGMENT:                           AFFIRMED

DATE OF JUDGMENT ENTRY:             January 22, 2019

APPEARANCES:

For Plaintiff-Appellant:                For Defendant-Appellee:

SUSAN J. LAX                            GREGORY J. RUFO
755 White Pond Dr., Suite 403           600 Chase Tower
Akron, OH 44320                         101 Central Plaza S.
                                        Canton, OH 44702

*Delaney, J.*

{¶1}   Plaintiff-appellant Melissa Thompson ("Mother") appeals from the May 21, 2018 Judgment Entry of the Stark County Court of Common Pleas, Domestic Relations Division.  Defendant-appellee is Eric Thompson ("Father").

**FACTS AND PROCEDURAL HISTORY**

{¶2}   Mother and Father were divorced in 2010; they have two children, D.T. and G.T.  D.T. is now emancipated and does not play a role in the instant proceedings.  G.T. is a minor.  Pursuant to the separation agreement of 2010, Mother was named residential parent and legal custodian for the children, with Father to receive reasonable companionship by mutual agreement.

{¶3}   In February 2017, Mother filed a contempt action against Father asserting nonpayment of medical expenses.  This motion was later withdrawn.

{¶4}   On March 13, 2017, Father filed a motion to reallocate parental rights and responsibilities, asserting G.T. wanted to live with Father.[1]  G.T. was born in December 2002 and was age 14 when the motion was filed.  Father also averred that Mother had numerous jobs; had moved the children four times in two different school districts; had exposed the children to "numerous" paramours; had limited involvement in the children's extracurricular activities; exposed the children to a "mean" step-grandparent; has had domestic disputes with the children; and does not have food available in the home.

{¶5}   A guardian ad litem (G.A.L.) was appointed on April 4, 2017.  She submitted reports dated June 15, 2017; August 21, 2017; December 8, 2017; and March 22, 2018.  Relevant here, the G.A.L.'s reports state G.T. said he wanted to live with Father.

---

[1] D.T. was emancipated as of May 2017.

{¶6} On August 28, 2017, the parties agreed G.T. would live with Father on an interim basis, making Father residential parent for school purposes. This agreement was filed on September 25, 2017. The immediate effect of the temporary orders was that G.T. would attend Smithville schools (Father's district) instead of Louisville schools (Mother's district).

{¶7} After the move to Father's house and the change of school district, the G.A.L. reported that G.T. was doing well at Father's house, making new friends, and settling into school. The school's intervention specialist reported to the G.A.L. that she had no current concerns for G.T., although at one point he did have a problem turning in assignments on time.

{¶8} G.T.'s purported health issues are a source of dispute for Mother and Father. Mother describes G.T. as "high-functioning autistic" requiring intervention at school. She reports G.T. has ongoing bowel problems requiring periodic attention of specialists. Father says Mother is unwilling to share information with him about G.T.'s medical issues and treatment. Father testified G.T. has not been diagnosed with Aspergers and points out his school intervention is for writing only.

{¶9} The matter proceeded to evidentiary hearing on April 6, 2018 and April 27, 2018. On May 21, 2018, the trial court issued a judgment entry granting Father's motion to reallocate parental rights and responsibilities. Father was named residential parent and legal custodian of G.T.

{¶10} The following evidence is adduced from the evidentiary hearing.

{¶11} On Mother's behalf, G.T. met several times with a counselor who described him as high-functioning autistic. His problems are primarily with social interaction; the

counselor found G.T. to be "very quiet" and difficult to interact with. Counseling was therefore limited to 9 sessions because it was not productive. G.T. had been in band at Louisville but was not in the band at Smithville.[2] G.T. plays Dungeons and Dragons, facilitated by Mother, through which he meets other people with similar interests. The counselor described G.T. as generally bright but immature. The counselor's knowledge of G.T.'s purported health issues, including asthma, allergies, and bowel issues, was limited to those reported by Mother. The counselor opined that G.T. is capable of expressing his own wishes regarding where he wants to live, but he can't always make good choices.

{¶12} The G.A.L. testified that she spoke to G.T. twice before he moved to Father's and twice afterward. She reported G.T. is doing well in school at Smithville and his grades are good, despite an issue earlier in the school year with turning in assignments on time. She reported G.T. is happy living with Father and hopes to remain there. The G.A.L. found G.T. to be quiet and hesitant to speak to her at first, although he became more forthcoming as their contact continued. The G.A.L. found G.T. to be interested in communicating about the custody dispute and fully capable of telling her his wishes. At first G.T. said he wanted to stay with Mother but to see Father more often. In later meetings, he unequivocally expressed that he wanted to live with Father.

{¶13} The G.A.L. acknowledged Mother alleged Father influenced G.T.'s opinion by paying him an unreasonable allowance, but G.T. and Father both denied this. G.T.

---

[2] It became evident later in the hearing that G.T.'s non-participation in Smithville's band is not because of lack of interest on his part, or lack of follow-up by Father, but the simple fact that G.T. missed Smithville's summer band practices by the time he transferred and was thus not allowed to participate.

said he would like to spend every other weekend with Mother because he wanted some weekends to spend time with Father, who works midnights.

{¶14} Ultimately the G.A.L. recommended shared parenting with Father as residential parent for school purposes and Mother having three weekends per month, splitting major school breaks and following Schedule A for holidays. Mid-week visits were determined to be not feasible because of distance between Mother and Father's residences and G.T.'s school hours. The G.A.L. noted the parents' communication is poor and would have to improve for the recommendations to work. She recommended use of the Family Wizard or similar program for communication between the parties.

{¶15} Upon cross-examination, the G.A.L. acknowledged G.T. had issues with getting homework done on time and had gained weight while living with Father. She opined that G.T.'s autism or Aspergers does not prevent him from articulating where he wants to live and does not make his opinions any less credible.[3] He has ongoing medical issues which both parents have handled appropriately. Regardless of whether Louisville or Smithville is objectively the "better" school district, G.T. is doing well at Smithville, is making friends, and is involved in activities such as foreign language club. She also noted Mother has complained about G.T.'s time spent with Father's wife ("Stepmother"), but the G.A.L. has no concerns regarding Stepmother and G.T. has never stated he doesn't like her or has problems with her.[4]

---

[3] At various points in the hearing, G.T.'s condition was described as autism, high-functioning autism, and Aspergers.

[4] An incident was alluded to by both sides at the hearing in which Mother reported Father and/or Stepmother may have used marijuana to the Smithville police. The police visited the residence but did not enter, and no further investigation was merited.

{¶16} The intervention specialist from the Smithville school district testified that G.T. does have an individualized education plan (I.E.P.) for writing only. Specifically, the I.E.P. addresses writing goals including organization, capitalization, and editing. The specialist saw no reason to update G.T.'s I.E.P. or to add anything to it. Although she has not communicated with Mother regarding the I.E.P. and did not have Mother's contact information, there had been no need for contact because G.T. was progressing favorably. The specialist further testified that G.T. is doing well in school, is somewhat introverted and loves to read, and will not need any special accommodations to enable him to someday go to college.

{¶17} Father testified he lives in Smithville, has been married to Stepmother since 2010, and works at Timken as a heavy-equipment operator. He has worked at Timken for 10 years, works midnights, and is a union steward. Father filed the motion to modify custody because in 2016 G.T. asked if he could live with Father and Stepmother. Although G.T. initiated the conversation about a change of custody, Father also noted several concerns. He cited Mother's "frequent" job changes and/or periods of unemployment; Mother moved several times, requiring G.T. to change schools; Mother's "numerous" paramours; problems with a "mean" maternal step-grandparent; problems between G.T. and his older brother, who has special needs and lives with Mother; Mother purportedly refused to pay G.T.'s band fee; and Mother failed to adequately provide lunch money or food.

{¶18} Father rebutted some of Mother's allegations. Mother alluded to Father's mental health issues, but Father testified although he had a period of depression after the divorce, he does not currently have mental health problems. Father denied that he gives

G.T. an extravagant allowance and said G.T. earns up to $30/week for doing chores around the house. Father testified G.T. is a "normal child" and that he has not been diagnosed with autism or Aspergers.

{¶19} Mother has lived in Louisville for six years. She rents a home and each son has his own room. Mother works for the Mahoning Educational Center as an early-childhood specialist; she has worked for the same employer since 2016 but at different locations. She earns $9.50/hour and supplements her income with side jobs such as helping disabled adults. She acknowledged she had a brief period of unemployment in 2013; she forgot to pay a utility bill and the electricity was turned off. Mother rebutted Father's testimony that G.T. doesn't get enough to eat because she receives food stamps and free school lunches. Mother testified there is plenty of food available in the house and at school, but G.T. wants "extras." Mother's paramour lives in Virginia and is sometimes at her house on weekends. She acknowledged her stepfather is "gruff" with the grandchildren but is not abusive and loves G.T. G.T.'s older brother D.Y. has mental health issues and Mother is his legal guardian. She testified the brothers have a loving relationship.

{¶20} Mother testified that in fact she paid half of the band fee Father complained about. She agreed to let G.T. live at Father's house temporarily because she was "under pressure" and has regretted the agreement ever since. She has specific complaints about Father as residential parent, including claims that G.T. is no longer on the honor roll, cannot access honor-roll classes at Smithville, comes home from Father's with significant hygiene issues, and has gained 50 pounds in the time he has been in Father's custody. Furthermore, G.T.'s asthma is aggravated by the fact that Stepmother and Father smoke,

including in the car, around G.T. She said G.T. comes home covered in dog hair and smelling of smoke, having not changed his clothes throughout the weekends he was with Father.

{¶21} Mother claimed G.T. is susceptible to manipulation and is asking to live with Father because of the inflated allowance and promises of a car when he is 16 and "sending him to Harvard." Father has also failed to stay on top of G.T.'s medical issues. Mother acknowledged she called the police to report Father and Stepmother's alleged marijuana use, and she subjected G.T. to a urine test to determine whether he was affected by smoking in Father's home.

{¶22} Several witnesses testified on Mother's behalf, including her mother, sister, and boyfriend. They testified that G.T. is a loving and well-behaved child who has recently begun to disrespect Mother.

{¶23} On May 21, 2018, the trial court granted Father's motion to modify the current order as to parental rights and responsibilities, naming Father as residential parent and legal custodian of G.T. Mother now appeals from the trial court's order.

{¶24} Mother raises one assignment of error:

### ASSIGNMENT OF ERROR

{¶25} "THE TRIAL COURT'S DECISION NAMING [FATHER] AS THE RESIDENTIAL PARENT AND LEGAL CUSTODIAN OF THE MINOR CHILD WAS AN ABUSE OF DISCRETION."

**ANALYSIS**

{¶26} Mother asserts in her sole assignment of error that the trial court's decision naming Father residential parent and legal custodian of G.T. is an abuse of discretion. We disagree.

{¶27} Our standard of review in assessing the disposition of child custody matters is that of abuse of discretion. *DiDonato v. DiDonato*, 5th Dist. Tuscarawas No. 2015 AP 07 0042, 2016-Ohio-1511, 63 N.E.3d 660, ¶ 44, citing *Miller v. Miller,* 37 Ohio St.3d 71, 523 N.E.2d 846 (1988). Furthermore, as an appellate court reviewing evidence in custody matters, we do not function as fact finders; we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base his or her judgment. *Id.,* citing *Dinger v. Dinger,* 5th Dist. Stark No. 2001 CA 00039, 2001-Ohio-1386, 2001 WL 1141268.

{¶28} The trial court is "best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). Deferential review in a child custody determination is especially crucial "where there may be much evidence by the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997). We are mindful that the knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record, and the reviewing court should be guided by the presumption

that the trial court's findings were correct.  See, *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988).

{¶29} Three elements must exist in order for a trial court to modify a prior decree allocating parental rights and responsibilities: (1) there must be an initial threshold showing a change in circumstances; (2) if circumstances have changed, the modification of custody must be in the children's best interests; and (3) any harm to the children from a modification of the plan must be outweighed by the advantages of such modification. R.C. 3109.04(E)(1)(a).

{¶30} R.C. 3109.04(E)(1)(a) provides as follows:

> The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent * * * and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree * * *, unless a modification is in the best interest of the child and one of the following applies * * * (iii) the harm likely to be caused by a change in environment is outweighed by the advantages of the change of environment to the child.

{¶31} R.C. 3109.04 does not define the concept of "change in circumstances." However, Ohio courts have held the phrase is intended to denote "an event, occurrence,

or situation which has a material and adverse effect upon a child." *Wyss v. Wyss,* 3 Ohio App.3d 412, 445 N.E.2d 1153 (10th Dist.1982). A trial court "must carefully consider the nature, circumstances, and effects of each purported change, such as growth and improvement (excepting some mistakes along the way) should be fostered rather than blindly chilled or penalized in the name of stability." *Murphy v. Murphy,* 5th Dist. Tuscarawas No. 2014 AP 01 0002, 2014-Ohio-4020, 2014 WL 4627809.

{¶32} Additionally, the change of circumstances must be "one of substance, not a slight or inconsequential change." *Davis v. Flickinger,* 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997). This prevents a constant re-litigation of the issues that have already been determined by a trial court. *Id.* The change in circumstances "must be based upon some fact that has arisen since the prior order or was unknown at the time of the prior order." *Brammer v. Brammer,* 194 Ohio App.3d 240, 2011-Ohio-2610, 955 N.E.2d 453 (3rd Dist.). Relocation alone is not sufficient to constitute a change in circumstances, but may be a factor in such determination. *Thompson v. Thompson,* 5th Dist. Stark No. 2012CA00176, 2013-Ohio-2587, 2013 WL 3193541.

{¶33} In this case, the trial court set forth several bases to support its finding a change of circumstances: Mother has changed jobs several times; moved the children several times; subjected the children to "at least three or four paramours;" and was involved in domestic disputes with her older son D.T.  The trial court further found that G.T. does not enjoy a close relationship with D.T. and will suffer no ill effects from living in a different household than his brother.  Moreover, G.T. wants to live with Father and his time living with Father has been successful in that he is doing well in school, making new friends, and receives support from the school if he needs it.  On Father' behalf, the

trial court noted Father's home environment has been more stable in terms of his residence, long-term job, and relationship with Stepmother.   Finally, the G.A.L. recommends Father as residential parent because he provides the consistent stability G.T. needs.

{¶34} Upon review, we find the trial court did not abuse its discretion in finding a change in circumstances. As noted above, the trial court is "best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base his or her judgment. *Dinger v. Dinger,* 5th Dist. Stark No. 2001 CA 00039, 2001-Ohio-1386, 2001 WL 1141268. Thus, we defer to the trial court's interpretation of the evidence as it observed first-hand witnesses and their demeanor. *Wright v. Wright,* 5th Dist. Stark No. 2012CA00232, 2013-Ohio-4138, 2013 WL 5406795.

{¶35} We find there is competent and credible evidence upon which the fact finder could base the judgment as to a change in circumstances. The evidence supports the trial court's findings as noted above.  While both parents are loving and want the best for G.T., Father is better able to provide stability and structure at this point in time, and the evidence does not support denying G.T.'s request to live with his father.

{¶36} If a change of circumstances is established, the trial court must weigh the best interest of the children before modifying a residential-parent designation. R.C. 3109.04(F), which sets forth the factors a trial court must consider in determining the best interest of the child, provides:

In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent

pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶37} In this case, the trial court set forth each statutory factor and addressed the evidence and testimony provided in the case. Mother's argument on appeal is addressed to (a), (b), (c), (d), (e), and (f), and she argues the trial court's findings are not supported by the evidence. Upon review of the record in this case, however, we find there is competent and credible evidence to support the trial court's conclusions with regard to these factors.

{¶38} It is evident from both parents' testimony and actions that they both wish to be named custodial and residential parent for school purposes. Mother argues that the G.A.L. recommended shared parenting and both parties were open to it. The trial court, however, specifically stated shared parenting was unworkable given the parties' failure to communicate. The trial court pointed out the evident ill will the parties have for each

other, to the detriment of their son's physical and emotional well-being. Upon our review of the record, we find the trial court did not abuse its discretion in rejecting shared parenting.

{¶39} G.T. has expressed to the G.A.L. that he wants to continue to live with Father. Contrary to Mother's allegations, there is no evidence G.T. has been "bribed" or coerced into stating his wish to live with Father. The wishes of the child constitute merely one factor that a trial court must consider in determining the best interests of the child; it is not the controlling factor and should not be the only factor upon which a trial court bases its decision. *Nusbaumer v. Cherry*, 5th Dist. Stark No. 1998CA00243, unreported, 1999 WL 254489, *3. "In essence, a trial court should evaluate a child's wishes and concerns regarding the allocation of parental rights and responsibilities from the standpoint of their depth, sincerity, and the extent they reflect changed circumstances within the parent-child relationship or relationship between the parties." *Butland v. Butland*, 10th Dist. Franklin No. 95APF09-1151, 1996 WL 362038, *4, appeal not allowed, 77 Ohio St.3d 1492, 673 N.E.2d 148 (1996). A trial court does not abuse its discretion in giving more weight to the child's wishes than it gave to his adjustment to his home, school and community where the child had sufficient reasoning ability to express his wishes and concerns, and that there were no special concerns that would lead the Court to conclude that it would not be in the child's best interest to determine his wishes and concerns. *In re Beekman*, 4th Dist. Pike No. 03CA710, 2004-Ohio-1066, ¶ 19; see also, *Tomaszewski v. Tomaszewski*, 8th Dist. Cuyahoga No. 86976, 2006-Ohio-3357.

{¶40} The trial court appropriately took the wishes and concerns of G.T. into account in making its decision, and also analyzed the remaining factors of R.C.

3109.04(F)(1). Thus, the trial court's best interest decision was not arbitrary or unreasonable. See, *Forney v. Forney*, 12th Dist. Clermont No. CA2011-08-057, 2012-Ohio-3427.

{¶41} G.T's interaction and interrelationship with his parents, siblings, and other relatives, and his adjustment to Father's home, school, and community, were contested by Mother and her relatives. On appeal, Mother cites the "change in personality" she and her relatives noticed recently, with G.T. becoming disrespectful toward her. As the trial court noted, the changes in G.T.'s personality could be attributed to the stress of the ongoing custody battle. Any incidental impairment of G.T.'s relationship with D.T. due to G.T. living with Father is outweighed by the benefits of G.T. staying where he wants to be. Despite the testimony of Mother and her witnesses that G.T. has experienced hygiene problems and a difficult adjustment to a new school, those allegations were not corroborated by the G.A.L. or school personnel. The trial court noted G.T. needs a structured agenda including chores, deadlines for homework, physical hygiene, and goals to accomplish.

{¶42} Mother argues Father has a "history of mental health issues" weighing against his appointment as residential parent. We find, as did the trial court, that incidents occurring in 2011 are remote and there is no evidence any similar incident might recur.

{¶43} Finally, although Mother provided contrary testimony to several of the statutory best-interest factors, we defer to the trial court's interpretation and weight of the evidence as it observed first-hand witnesses and their demeanor. *Wright v. Wright,* 5th Dist. Stark No. 2012CA00232, 2013-Ohio-4138, 2013 WL 5406795. We find no abuse of discretion in the trial court's conclusion it was in the best interest of G.T. to name Father

the residential parent and legal custodian. The decision of the trial court thoroughly analyzed the factors and the findings were supported by the record.

### CONCLUSION

{¶44} Mother's sole assignment of error is overruled and the judgment of the Stark County Court of Common Pleas, Domestic Relations Division is affirmed.

By: Delaney, J.,

Gwin, P.J. and

Wise, Earle, J., concur.