[Cite as *Lafferty v. Houghtland*, 2024-Ohio-5642.]

## IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## WYANDOT COUNTY

CHRISTINA LAFFERTY,

    PLAINTIFF-APPELLANT,

  CASE NO. 16-24-07

   v.

DEVLIN HOUGHTLAND,

    DEFENDANT-APPELLEE,

  -And-

STEPHEN AND LUANN SCHUSTER,      O P I N I O N

    THIRD-PARTY DEFENDANTS/
    APPELLEES.

Appeal from Wyandot County Common Pleas Court
Juvenile Division
Trial Court No. I2233015

**Judgment Affirmed**

Date of Decision:  December 2, 2024

APPEARANCES:

    *Sarah M. Walter* **for Appellant**

    *Edwin M. Bibler* **for Appellees Stephan and Luann Schuster**

**WALDICK, J.**

**{¶1}** Movant-appellant, Christina Lafferty ("Christina"), brings this appeal from the March 4, 2024 judgment of the Wyandot County Common Pleas Court, Juvenile Division. On appeal, Christina argues that the trial court erred by denying her motions to change the custody arrangement involving the minor children A.H. and X.H. For the reasons that follow, we affirm the judgment of the trial court.

*Background*

**{¶2}** Christina is the mother of A.H. and X.H. Shortly after X.H. was born in 2018, X.H. had a "serious injury" that led to a dependency action being filed by the Wyandot County Department of Job and Family Services.[1] The dependency case resulted in A.H. and X.H. being placed in the legal custody of their maternal grandmother, LuAnn S. ("LuAnn"). Pursuant to the legal custody award to LuAnn, Christina was granted supervised parenting time at LuAnn's residence.

**{¶3}** Christina exercised supervised visitation at LuAnn's residence until LuAnn discovered that Christina was secretly recording conversations during the visitations. After that, visitation was moved to "Hannah's House" in Upper Sandusky. Christina regularly visited the children at Hannah's House and she was

---

[1] Because the original children's services case file is not before us, we have very little information regarding the original dependency action. Thus the record does not detail what X.H.'s injuries were.

eventually granted unsupervised visitation with the children, including overnight visits.

{¶4} In February of 2023, and in September of 2023, Christina filed motions for a change of custody, seeking custody of A.H. and X.H. Christina argued, *inter alia*, that years had passed since the original dependency case, and that she had a stable, suitable home. She argued that the children were getting older and that she believed that LuAnn was causing alienation between Christina and the children.

{¶5} A GAL was appointed for the children and the case proceeded to a final hearing on the motions to change custody on February 28, 2024. Following the presentation of evidence, the trial court took the matter under advisement.

{¶6} On March 4, 2024, the trial court filed a judgment entry denying Christina's motions to change custody. After reviewing the evidence, the trial court determined that although Christina had significantly improved her situation and her ability to parent the children since LuAnn had been granted legal custody, her improvements could not legally be considered when determining if there had been a change in circumstances. Rather, the change in circumstances had to be regarding the children, or their legal custodian.

{¶7} The trial court reasoned that while the children and the legal custodian had aged, this was not significant enough to constitute a change of circumstances to warrant altering the custody arrangement. Further, the trial court determined that

LuAnn had followed previous court orders in the matter exactly, and that she had provided "five years of stability for the minor children." (Doc. No. 31). Thus the trial court determined that there had not been a change in circumstances such that the custody arrangement should be altered.

{¶8} Although the trial court determined that there had not been a change in circumstances such that the custody arrangement should be altered, the trial court did determine that Christina's visitation should be increased. Christina's parenting time was then modified in the trial court's entry to increase her visitation. Nevertheless, Christina now appeals the trial court's judgment denying her motions for change in custody, asserting the following assignments of error for our review.

### First Assignment of Error

**The court erred in finding that no change of circumstances has occurred.**

### Second Assignment of Error

**The court erred in finding that the court is "not permitted to use the Respondent's conduct to find a change of circumstances."**

{¶9} Because the assignments of error are interrelated, we will address them together.

*First and Second Assignments of Error*

**{¶10}** In her first assignment of error, Christina argues that the trial court erred by determining that she had not demonstrated that a change of circumstances occurred in this case sufficient to warrant altering the custody arrangement. In her second assignment of error, Christina argues that the trial court specifically erred by determining that it was not permitted to use "Respondents" conduct to find a change of circumstances.

## Standard of Review

**{¶11}** A trial court has broad discretion when determining the allocation of parental rights and responsibilities. *Wilcox v. Liams*, 2019-Ohio-3030, ¶ 20 (3d Dist.). Therefore, a trial court's decision regarding the allocation of parental rights and responsibilities will not be reversed on appeal absent an abuse of discretion. *Id.* An abuse of discretion is present when the trial court's decision is unreasonable, arbitrary, or capricious. *Schroeder v. Niese*, 2016-Ohio-8397, ¶ 7 (3d Dist.).

## Relevant Authority

**{¶12}** Revised Code 3109.04(E)(1)(a) provides a two-step procedure that is required for modification of any prior court-approved parenting decree. Under this standard, the court must first find that "'a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree.'" *Wooten v. Schwaderer*, 2008-Ohio-3221, ¶ 3 (3d Dist.), quoting

R.C. 3109.04(E)(1)(a). Second, if the court finds that there has been a change in circumstances, the trial court must determine whether the modification is necessary to serve the best interests of the child. *Id.*

{¶13} "Although R.C. 3109.04 does not provide a definition of the phrase 'change in circumstances,' Ohio courts have held that the phrase is intended to denote 'an event, occurrence, or situation which has a material and adverse effect upon a child.'" *Lewis v. Lewis,* 2002-Ohio-1601 (12th Dist.) citing *Rohrbaugh v. Rohrbaugh,* 136 Ohio App.3d 599, 604–05 (7th Dist.2000). In order to warrant the abrupt disruption of the child's home life, the change in circumstances must be one "of substance, not a slight or inconsequential change." *Davis v. Flickinger,* 1997-Ohio-260. "The purpose of requiring a finding of a change in circumstances is to prevent a constant re-litigation of issues that have already been determined by the trial court. * * * Therefore, the modification must be based upon some fact that has arisen since the prior order or was unknown at the time of the prior order." *Brammer v. Brammer,* 2011–Ohio–2610, ¶ 17 (3d Dist.), citing R.C. 3109.04(E)(1)(a).

Analysis

{¶14} LuAnn has been the legal custodian of A.H. and X.H. for over five years. By all accounts, the children are thriving and doing well in school. The children are also healthy and active. Further, the testimony indicated that LuAnn was following the court's orders with respect to Christina's parenting time.

{¶15} However, since LuAnn has been granted legal custody of Christina's children, Christina has significantly improved her situation. Christina has maintained a stable, suitable home. She has maintained the same romantic relationship, and she has had another child. Christina has demonstrated her ability to be a capable mother to her new child, and she has, according to testimony, improved her parenting skills when interacting with A.H. and X.H.

{¶16} In 2023, Christina filed two motions to change the custody arrangement, arguing that there had been a change in circumstances and that it was in the children's best interest that she be granted custody. After holding a hearing on the matter, the trial court determined that Christina had not established "that there has been a change in circumstances as to warrant changing custody to the Movant based on the evidence." (Doc. No. 31). In reaching its conclusion, the trial court reasoned, in part, as follows:

> The evidence showed that the Respondents have followed previous court orders in this matter exactly. The Respondents appear to have followed the previous order to the letter and allow for visitation to occur as prescribed by this Court's previous order. The Respondents should be recognized for their actions in providing five years of stability for the minor children. This being said, the Court does find credibility in the testimony from the Movant that she requested to see the minor children over Christmas, and she was rejected. However when Respondents were contacted by the Guardian ad Litem, the request was immediately accommodated, and the Movant did see the children over Christmas. Why was the intervention by the Guardian ad Litem needed? This occurrence coupled with other evidence presented at the hearing indicate a power struggle between the parties, in which the Respondents clearly have an upper hand. Despite the

> flawed relationship between the parties, the evidence indicates the children are thriving in their current situation. Regardless of the fact that everyone agrees that Movant has significantly improved upon her situation and ability to parent the minor children, the Court is not permitted to use Respondents' conduct to find a change of circumstances. The focus is on the children and Respondents' care of the children.

(Doc. No. 31).

{¶17} Christina argues that the trial court's analysis was flawed for not giving enough weight to multiple issues. First, she argues that LuAnn's husband engaged in inappropriate shower behavior with X.H. Second, she argues that X.H. arrived at a visitation one time underdressed for the cold weather, and that on another occasion X.H. arrived with a dog bite injury on his hand from LuAnn's dog. Christina also argues that LuAnn was alienating her from her children.

{¶18} Christina notes that the GAL supported her motion for a change of custody. The GAL was particularly concerned with the fact that LuAnn and her husband were approximately 70 years old at the time of the final hearing. Finally, Christina contends that the trial court erred when it said it was not permitted to use "Respondents' conduct to find a change in circumstances."

{¶19} In reviewing Christina's arguments, we emphasize at the outset that it is not clear that there were any "inappropriate shower behaviors" between LuAnn's husband and X.H. LuAnn's husband testified that he bathed X.H. when he was a baby in the sink, and he continued to assist in bathing X.H. in the shower when X.H.

was 3 or 4 years old. LuAnn's husband was a retired teacher and he denied touching X.H. inappropriately. When an issue was raised about LuAnn's husband showering with X.H., he stopped, so the "issue" was not ongoing even at the time of the final hearing. We find no error with the trial court determining that this issue lacked the significance to meet a change of circumstances.

{¶20} Next, Christina maintained there had been alienation occurring in this case caused by LuAnn and her husband, yet LuAnn readily complied with court orders and allowed Christina to have additional parenting time when the parties agreed. Christina had a good relationship with her children despite any communication issues between the parties. The trial court was well within its discretion to determine that the communication issues were not a significant factor regarding a change in circumstances. This is particularly true given that LuAnn and her husband were both open to modifying visitation so that Christina could have additional parenting time with the children going forward.

{¶21} As to Christina and the GAL's claims that LuAnn and her husband were simply getting too old to parent the children, there was no testimony indicating that LuAnn and her husband were having difficulty caring for the children. Neither LuAnn nor her husband had significant health issues. Further, the trial court noted that the age of LuAnn and her husband was considered when they were granted legal

custody and that legal custody was supposed to be permanent in nature.[2] *See* R.C. 2151.353(A)(3) (stating that legal custody is intended to be permanent in nature).

**{¶22}** Moreover, the trial court specifically disagreed with the GAL's assessment of the case, indicating it was "unmoved" by the GAL's testimony. We find no abuse of discretion with the trial court's determination that the ages of LuAnn and her husband did not constitute a change of circumstances.

**{¶23}** Finally, Christina argues that the trial court erred by finding that it was not permitted to use "Respondents" conduct to find a change in circumstances; however, given the actual context of the trial court's reasoning in its entry, it is evident that the trial court meant it could not consider "Movant's conduct" rather than "Respondents conduct." In the first half of the sentence, the trial court is reciting all of Christina's (Movant's) improvements since LuAnn had been granted legal custody. Thus it only makes sense that in the second half of the sentence the trial court would be indicating that despite Christina's improvements, those were not relevant considerations for a change of circumstances analysis both by statute and through caselaw.

**{¶24}** Revised Code 3109.04(E)(1)(a) indicates that a trial court shall not modify a prior custody decree unless a "change has occurred in the circumstances of the child, [or] the child's residential parent[.]" The statute does not consider

---

[2] There was some testimony that Christina had issues with the children calling LuAnn and her husband "mom" and "dad." The testimony on this issue is conflicting and inconsistent.

change in circumstances of the non-legal custodian as relevant. *Clyborn v. Clyborn*, 93 Ohio App.3d 192, 195 (3rd Dist.1994) ("While the record indicates appellant's emotional state has improved since being 'coerced' to relinquish custody, such a change is irrelevant because the statute requires a change in the circumstances of the child or the residential parent."); *Lewis v. Lewis*, 2002-Ohio-1601 (12th Dist.); *Wright v. Wright*, 2013-Ohio-4138 (5th Dist.). Therefore while the trial court's wording in its final entry is inexact, the legal fundamentals of the decision are supported.

{¶25} This case is similar to *Knauss v. Unverferth*, 2020-Ohio-848 (3d Dist.), wherein we determined the trial court did not err by finding there was not a change of circumstances such that a custody arrangement should be altered when there was competent, credible evidence to support the trial court's determination. Given Christina's growing bond with the children, we do not find any error with the trial court's determination that there was an insignificant showing of alienation here. As stated previously, we also find no abuse of discretion with the trial court's determination that LuAnn and her husband's ages are currently non-factors and there is no evidence that the "shower issue" was actually an issue.

{¶26} By all accounts, the children are doing well and they will now be engaging in more parenting time with Christina. Nothing forecloses Christina from refiling in the future if there is an actual, substantive change in circumstances

regarding the children or LuAnn and her husband. For all of these reasons, Christina's first and second assignments of error are overruled.

*Conclusion*

{¶27} Having found no error prejudicial to Christina in the particulars assigned and argued, her assignments of error are overruled and the judgment of the Wyandot County Common Pleas Court, Juvenile Division, is affirmed.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. and ZIMMERMAN, J., concur.**

**/jlm**