[Cite as *Jourdan v. Jourdan*, 2023-Ohio-1826.]

COURT OF APPEALS
PERRY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| SUSAN JOURDAN nka TETER-GILLIAM | : | JUDGES:<br>Hon. W. Scott Gwin, P.J.<br>Hon. Patricia A. Delaney, J. |
|  | : | Hon. Andrew J. King, J. |
| Plaintiff-Appellant/Cross-Appellee | : |  |
|  | : |  |
| -vs- | : | Case No. 22-CA-00004 |
|  | : |  |
| JOHN JOURDAN | : |  |
|  | : | OPINION |
| Defendant-Appellee/Cross-Appellant |  |  |

CHARACTER OF PROCEEDING: Appeal from the Perry County Court of Common Pleas, Case No. 08-DV-00300

JUDGMENT: Affirmed in part; Reversed and Remanded in part

DATE OF JUDGMENT ENTRY: May 31, 2023

APPEARANCES:

For – Father

ANDREW T. LIPP
123 S. Broad St.,
Suite 309
Lancaster, OH 43130

For - Mother

PHILIP L. PROCTOR
P.O. Box 4803
Newark, OH 43058

*Gwin, P.J.*

{¶1} Both Mother and Father appeal the April 8, 2022 judgment entry of the Perry County Court of Common Pleas.

*Facts & Procedural History*

{¶2} Susan Jourdan, nka Susan Teter-Gilliam ("Mother") and John Jourdan ("Father") were married in 2004. They have one minor child, A.J., who was born on August 5, 2005, and will soon reach the age of majority. A final judgment entry of divorce was issued in 2009.

{¶3} There have been numerous motions and judgment entries filed in this case. In April of 2020, Father filed a motion for reallocation of parental rights and responsibilities. In May of 2020, Mother filed a motion to remove travel restrictions, stating she wanted to move to Texas with her fiancée and A.J.

{¶4} On December 4, 2020, the magistrate held an all-day hearing on the pending motions in the case, including Father's motion for reallocation of parental rights, Father's motion for shared parenting, Mother's motion to remove travel restrictions, a motion to modify parenting time, and several contempt motions. The following facts are adduced from the hearing on December 4, 2020.

{¶5} Prior to March 14, 2020, Father was exercising his parenting time every other week-end. An incident occurred on March 14, 2020. Mother called Father and told Father A.J. wanted to come stay with him. Father testified Mother found a cell phone in A.J.'s possession that did not belong to anyone in the household and A.J. would not tell Mother who it belonged to, or give her the password. While Father was at work, A.J. told him she had a urinary tract infection and needed to go the emergency room. Father told

her he would take her after school. When Father arrived home, A.J. had left the home without permission, stated she did not want to go to the emergency room, and asked to return to Mother's house. Father agreed.

{¶6} In the car on the way to Mother's house, Father confronted A.J. about lying. Father pulled down the visor so A.J. could see the mirror, and stated that the person in the mirror was causing the problems, not Mother or Father. A.J. took her hand and slapped Father across the face while he was driving approximately 30-35 miles per hour. Father's right hand went up and held A.J. so she could not hit him again. Father drove to the police station.

{¶7} Officer Wiseman ("Wiseman") testified about the incident. He stated that Father brought A.J. into the police station because A.J. struck Father while he was driving. Wiseman was not concerned about Father's actions because Father did not initiate the physical violence, Father was just trying to stop the violence against him. Mother filed a civil protection order against Father after this incident, but it was denied and dismissed.

{¶8} After the parties took away the child's phone, Father permitted A.J. to use his iPod, with his and Mother's supervision. When A.J. came for her next visit, Father found A.J. had signed up for dating sites, messaging apps, and Father found inappropriate messages to A.J. from an older man.

{¶9} Father returned to the police station with concerns about the messages A.J. was receiving on her phone. Officer Wiseman heard Father call Mother on speakerphone. Mother hung up on Father, and when Father called back, Mother would not answer the phone. Officer Wiseman testified Father was not screaming or yelling, he

was just worried. Father stated he was very concerned about these messages because the child previously had inappropriate messages on her phone in both 2017 and 2019.

{¶10} Father and A.J. were referred to family counseling with Lisa Harper ("Harper") in 2019. Harper stated the parties initially came to counseling to 2019, participated well, and they did not need to work together very long before they resolved their issues and agreed to move forward. Father and A.J. re-engaged in counseling in 2020 after the March incident. They did not immediately start counseling because Mother delayed in signing the releases required for A.J. to participate in the counseling, and Mother delayed in signing the releases for Harper to speak to A.J.'s personal counselor. When the counseling began again in 2020, Harper held approximately twelve sessions with Father and A.J. Harper stated the sessions were pleasant and appropriate, with both Father and A.J. cooperating. A.J. was less willing to participate in the sessions as the end of the year came closer, and A.J. stated in a session that she did not want to come up with a goal for treatment because it may hinder her ability to move to Texas.

{¶11} A.J. never told Harper that she felt physically or emotionally abused at Father's house, and never expressed to either Harper or her assistant that she was uncomfortable at Father's house. Harper contacted A.J.'s personal counselor to inquire as to whether any part of the therapeutic family sessions was upsetting to A.J., and A.J.'s personal counselor had no concerns about the family counseling. Harper testified she does not believe A.J. is in danger around Father.

{¶12} Harper asked Mother not to sit in the waiting room during sessions, because, after the first session, Mother was upset when the session lasted longer than Mother thought it should have, and Mother placed her chair in the hallway next to Harper's

office door. Harper also asked Mother not to sit in the driveway during the sessions because it made it easier for A.J. to leave. While Mother did not return to the waiting room, she did sit in her car outside the office and sat in the driveway when the sessions were moved to Father's home. Mother testified she sat in the driveway at Father's house because she had nowhere else to go. Mother also stated Harper's testimony was untruthful.

{¶13} Crystal Jourdan, the child's paternal grandmother, lives with Father. She has never seen Father be violent with A.J.

{¶14} Father believes it is in A.J.'s best interest for shared parenting to be granted, and does not believe a move to Texas is in A.J.'s best interest. Father's concerns are as follows: the child is doing very poorly in school with multiple F's for grades; the daily attendance portal shows the child has missed many days with unexcused absences; the child has had a consistent lack of stability in school districts while living with Mother; this lack of stability has had a negative impact on A.J.'s grades and her ability to make friends; and Mother has previously moved out-of-state to Indiana without court approval and he believes she will do it again. Father believes A.J. would do better in his school district, where she could stay at the same school until high school graduation. Father understands A.J. wants to live in Texas; however, he believes this is due to Mother's actions. Further, while he agrees A.J. should have the right to express her opinion to the court, Father stated the child has made very poor decisions in the last few years. Father denied having anger issues and stated he never physically or emotionally abused A.J.

{¶15} Mother testified A.J. wants to live with her. Mother does not believe Father is an appropriate parent, as evidenced by the March 14th incident. Mother has a fiancée.

She started dating him in 2019. Mother's fiancée works fourteen days in Texas, and then is off for 14 days. On cross-examination, Mother testified her fiancée is currently married to someone else. Mother's current lease in Ohio was up in August, but she was able to get it extended. Mother has a rental house in Texas, and testified she intends to move there. Mother stated she has witnessed Father be verbally abusive "to a lot of people," including A.J. Mother believes Father has anger issues.

{¶16} The Guardian ad litem, Sonya Marshall ("Marshall" or "GAL"), submitted a detailed report, and also offered extensive testimony. Marshall was originally appointed as the GAL in the case in 2017, and was re-appointed in 2019. Marshall recommends the child not move to Texas. Accordingly, if Mother chooses to move to Texas, Marshall believes Father should be designated the residential parent and custodian of the child, with Mother having long-distance visitation. If Mother was not moving, she would recommend shared parenting with Father as the residential parent for school purposes so A.J. can remain in the same school district until graduation. Marshall bases this conclusion on everything she has known about the family since 2017. Marshall agrees this is not an ideal situation since A.J. has not lived with Father previously, but Marshall has to make this recommendation since the parents will live so far apart.

{¶17} Marshall testified about several concerns she has about A.J. These include: what A.J. is sending and receiving on her phone; promiscuity on A.J.'s cell phone; her attendance at school; the child's grades, particularly last year and this year; and the constant changing of school districts.

{¶18} When asked why A.J. going to Texas would be a problem, Marshall stated she has concerns about Mother's ability in general because, ever since Marshall has been

involved in the case, it has been an issue with Mother changing residences and changing the child's school district. Marshall testified to a pattern by Mother of moving to be with a new significant other, and moving again when that relationship does not work out. Marshall testified, "this is the history and this is the pattern." Marshall stated that, as of 2019, A.J. attended seven different school districts. Marshall's goal is to give A.J. stability. Marshall does not believe it is in A.J.'s best interest to relocate to Texas. Marshall testified that if A.J. moves to Texas, A.J.'s relationship with Father will not survive, and this is not in the child's best interest. Further, Marshall testified that she has "no faith, absolutely none, that if Mother moves to Texas," the child would finish at the same school she starts at in Texas. Further, Marshall stated that, since 2017, she consistently recommended the child not change school districts. However, Mother continues to change A.J.'s school district. When asked if it was reasonable for Mother to live so far from her fiancée, Marshall testified it is her job to determine what is in the best interest of the child, not what is in the best interest of Mother and her relationship. Marshall believes what is in A.J.'s best interest is stability. Marshall believes Mother is not making A.J. a priority, and this has been an issue with both Father and Mother throughout the case.

{¶19} Marshall acknowledged that A.J. wants to move to Texas. Marshall testified that simply because a child is fifteen years old does mean the child makes good decisions. Further, that A.J.'s wishes are only one factor Marshall takes into consideration when she is making a recommendation as to the best interest of the child. While what an older child wants is a larger piece of the puzzle than what a younger child wants, Marshall still looks at everything in the case and surrounding circumstances before making her recommendation. Marshall believe she has a good understanding of what is going on

between A.J. and Father, and has taken that into consideration with her recommendation. While A.J. articulates herself well, ultimately her wishes are different from what Marshall believes is in her best interest.

{¶20} On December 7, 2020, the magistrate ordered Mother, Father, and the attorney for the child to submit written closing arguments and findings of fact and conclusions of law within fourteen days.

{¶21} On January 22, 2021, Father filed a motion for contempt and ex parte relief, stating that Mother had absconded with A.J. to Texas in violation of a court order. The motion stated Mother removed A.J. from Granville schools on December 18, 2020, and enrolled A.J. at a school in Texas, without notifying Father. On the same day, Mother filed a notice of change of address that contained an address in Texas. The trial court granted the ex parte order and granted Father temporary custody of the child. The trial court ordered Mother to immediately return the child to Ohio.

{¶22} The magistrate held hearings on February 4, 2021 and February 8, 2021. Father testified he found out via an email from the school that Mother moved A.J. to Texas and enrolled her in a new school. Father called Mother on January 8, 2021 to discuss delaying his visit with A.J. due to a family member of Father's testing positive for COVID. Mother never told him during this phone conversation that she and the child moved to Texas. When Mother sent A.J. back to Ohio after the court order, she did not tell Father she was sending the child back, and A.J. appeared at his door. When A.J. returned, Father enrolled her in school and counseling.

{¶23} Mother does not believe she misled the court at the previous hearing. She testified she could not stay with her parents or her other daughter in Licking County

because they have animals that do not get along with her animals. Mother stated she had no other option but to move to Texas and enroll the child there. Mother testified that when she took the child to Texas, she knew there was a court order stating she was not to relocate the child out of the state of Ohio, but she did not intend to violate the court order. Mother did not notify Father when she moved the child to Texas on January 15, 2020. Mother considered her testimony at the December 4th hearing to be sufficient notification. Mother did not notify Father that she took the child out of Granville schools on December 18, but considered her testimony at the December 4th hearing to be sufficient notification. Mother admits she did not give Father or the court her exact address in Texas until January of 2021, but believes her testimony at the December hearing was sufficient notice for both Father and the court.

{¶24} When Mother received the order from the court, she sent the child back to Ohio the next day. The child's maternal grandmother picked her up from the airport on January 23, 2021. The child's maternal grandmother did not notify Father she had the child on the 23rd, but dropped the child off at Father's house on January 25, 2021.

{¶25} The parties described an incident in January where Father asked A.J. to see her school schedule and, when she refused, Father grabbed the paper out of A.J.'s hand. A.J. then hit Father in the chest and scratched his face. Father grabbed A.J.'s arm so she could not hit him anymore. A.J. requested to go to her maternal grandparents' house, which Father allowed.

{¶26} The magistrate issued a detailed and thorough decision and order on April 28, 2021. The magistrate made detailed findings of fact. The magistrate reviewed the concerns and cited the recommendations of Marshall. The magistrate first noted that

Mother has moved a significant number of times since the divorce in 2008. In 2010, Father initiated a motion after Mother moved the child to Indiana. The child attended three different schools while in Indiana. Mother and A.J. then returned home to Ohio, where A.J. attended Riverview School District. Mother then moved A.J. from Riverview to Tri-Valley, and then enrolled A.J. in Granville two days before high school started. Further, Mother attempted to obtain a court order to allow A.J. to attend a private military academy in Texas. The magistrate found the change of school districts was driven by Mother's life and relationship choices, and this has set the example for the child that all your need to do to fix your problems is move, which has created major adjustment issues for A.J.

{¶27} The magistrate acknowledged A.J.'s desire to move to Texas. As to the testimony provided by A.J. during the in-camera interview, the magistrate found the minor child "seemed coached" and articulated the same wishes and concerns about Father as when she was younger. The magistrate found A.J.'s statements were similar to Mother's testimony. The magistrate stated, "while the minor child is a bright, pleasant child, the court does not find her wishes and concerns to be authentic and cannot solely rely on her wishes to determine whether a move is in her best interest."

{¶28} The magistrate found Mother deliberately misled the court as to her plans to move. While her testimony was that she could not remain in her rental home in Granville after December 31, 2020, Mother has several other family members in Licking County. The magistrate found Mother's contention that she had no other choice but to move twenty hours away in violation of a court order not credible. Additionally, the court noted that, when Mother received the court order to return the child to Ohio, she did not

contact Father, but instead put the child on a plane, had her family pick up the child, and drop off the child at Father's house without notice.

**{¶29}** As to both parents, the magistrate found both Mother and Father inappropriately involved law enforcement too often in this case, and both have communication issues. Further, that Mother has engaged in a pattern of conduct (her decisions to move or attempt to move) that has fueled most of the litigation in this matter. The magistrate found the testimony was uncontroverted that, even with Mother having custody and spending the bulk of the amount of time with A.J., the child is not doing well emotionally, mentally, or academically. Despite this, Mother blames any problems that occur on Father. Further, that Mother does not facilitate a positive relationship between A.J. and Father because she used her best efforts to interfere with counseling.

**{¶30}** The magistrate found that while Father does have a temper, he and A.J. were doing well in counseling. Father has an appropriate residence, with no plans to move. The magistrate noted Marshall's testimony that Father is not a danger to the child.

**{¶31}** The court found that, based upon the testimony and evidence as reflected in the findings of fact, there is a change of circumstances, most notably the move, but also Mother's actions and inactions, and the family dynamic. Further, that the harm likely to be caused by the change in environment is outweighed by the advantage to the minor child.

**{¶32}** The magistrate then reviewed each best interest factor in detail, as follows: (a) Mother wishes to retain custody and move the child to Texas, while Father wishes to have custody or shared parenting and allow the child to have stability; (b) the court interviewed the child multiple times and the child expresses an interest in moving to

Texas, however, the court cannot put weight on her wishes because she is heavily influenced by Mother, creating doubt that the child's wishes are authentic; (c) the child is bonded to Mother and her family in Ohio; though the child has had issues with Father, there is a bond between them; (d) the child has no ties to Texas, and has not been given a meaningful opportunity to adjust to her home, school, and community due to frequent home, school, and community changes; the child's behavior declined and her grades suffered; (e) Father may have anger issues, but he has been continued to be provoked by Mother and Mother's corruption of the child; Father has participated in counseling; Mother's defiant behavior causes the court to be concerned about her mental health and how it is negatively impacting the child; (f) Father is the parent more willing to facilitate visitation;  there has been an extended power struggle between both parents, which is harmful to the child; (i) Mother's compliance is selective in honoring the visitation schedule; and (j) Mother moved to Texas.

{¶33}  The magistrate concluded it is not in A.J.'s best interest to move to Texas. The magistrate stated the testimony at the hearing reflected these key points:  under Mother's care, the minor child is academically in a downhill spiral; Mother's intent at the time of the hearing was that, even living in Texas, she would be ten hours away from her fiancée's worksite; and Mother's fiancée is still married to another woman.

{¶34}  The magistrate attached a child support worksheet and ordered Mother to pay child support effective January 23, 2021.  The magistrate ordered a 50% deviation based upon in-kind contributions associated with travel expenses and ordered financial contributions for the support and care of the minor child.

{¶35} The magistrate found Mother in contempt for willfully interfering in Father and A.J.'s counseling and for her willful defiance of the court's order not to change the minor child's school without a specific order from the court. The magistrate denied the remainder of Father's contempt motions. The magistrate sentenced Mother to thirty days in jail and a fine of $250, but suspended both the sentence and the fine on the condition that there are no further violations of the court order by Mother and Mother pays Father's attorney fees incurred as a result of pursuing the contempt motions. The court ordered counsel for Father to submit invoices and an affidavit from counsel demonstrating the fees are reasonable and customary.

{¶36} The magistrate ordered the GAL fees to be equally divided and ordered Mother to pay for the fees for the attorney for the child.

{¶37} On May 10, 2021, Mother filed a motion for extension of time to file objections. The trial court granted the motion. On May 14, 2021, Father filed initial objections. On May 17, 2021, the magistrate issued a decision ordering Mother to pay $7,825 in attorney fees for the contempt motions. Both Mother and Father filed supplemental objections.

{¶38} The trial court issued a judgment entry on April 8, 2022. The trial court found Father's objections were not timely, and denied them as being out of rule.

{¶39} The court then ruled on Mother's objections. First, the court determined Mother failed to establish that Father abused the minor child, and cited the testimony from Harper that A.J. is not in danger around Father and her testimony that the child never stated that she was uncomfortable around Father due to physical or psychological abuse. While Mother focused on the March 14th incident, Father put his arm out to hold A.J. from

hitting him again, which caused minor injury to A.J. During the other incident Mother cited, when A.J. refused to show Father her school schedule, Father attempted to grab the schedule and A.J. hit him in the chest and scratched his face.

{¶40} The court affirmed the magistrate's finding of a change in circumstances, citing the following: A.J. has been in seven different school districts; Mother has been unable to provide a stable life for A.J.; A.J. doing poorly in school when residing with Mother; the number of unexcused absences from school when A.J. was with Mother; and the fact that A.J. is not doing well emotionally, mentally, or academically in Mother's care, despite the fact that Mother blames all of A.J.'s problems on Father. The court found the harm likely to be caused by any change is outweighed by the advantages of change in environment because Father can provide the stability Mother has been unable to provide. As to Mother's objections to the contempt findings, the court found Mother's argument that she was not served is without merit, as Mother and her counsel appeared and fully participated in the hearings which included testimony about the contempt, and Mother did not object to service at the hearing. Rather than objecting to service at the hearing, Mother participated in the hearing and set forth her arguments against the contempt. The court cited the November 1, 2019 order of the court not to move the minor child without an order of the court and found there was no "emergency" causing Mother to move. Further, that Mother interfered with counseling by delaying in signing releases, and parking in Father's driveway during counseling sessions, which allowed A.J. to leave before the sessions were over. The trial court sustained Mother's objection to the award of attorney fees for the contempt motions. The court found Father's affidavit stating the fees were reasonable and customary was not sufficient to demonstrate what fees were

reasonable and customary.  The court suggested an affidavit from an attorney would be a more appropriate way in which to demonstrate reasonable and customary fees.

**{¶41}** The trial court ordered Mother to pay the fees for A.J.'s appointed attorney because Mother filed the motion to appoint the attorney and Father objected to the appointment as being an unnecessary expense.  The court additionally found the magistrate gave A.J.'s attorney the opportunity to submit a closing argument, but she did not do so.

**{¶42}** Both Mother and Father appeal the April 8, 2022 judgment entry of the Perry County Court of Common Pleas.

**{¶43}** Mother assigns the following as error:

**{¶44}** "I. THE TRIAL COURT ERRED BY GRANTING CUSTODY TO THE FATHER AGAINST THE CHILD'S WISHES AND REFUSED TO COMPLY WITH STATUTORY AND CASE LAW THAT WHERE THE CHILD IS AT AN AGE, MATURITY LEVEL, AND REASONING ABILITY AND SHE HAS BEEN ABUSED BY A PARENT, THE COURT MUST COMPLY WITH THE CHILD'S CHOICE TO LIVE WITH THE PARENT WHO IS NOT ABUSING HER AND NO OTHER FACTORS CAN TRUMP HER CHOICE UNDER SUCH A CIRCUMSTANCE.

**{¶45}** "II. THE TRIAL COURT ERRED IN GRANTING CUSTODY TO THE FATHER, WHERE THERE HAS NOT BEEN PROOF OF A SUBSTANTIAL CHANGE IN CIRCUMSTANCES, CHANGE IN CIRCUMSTANCES MUST ATTACH AS OF THE DATE THE MOTION IS FILED (ABSENT ANOTHER MOTION BEING FILED), AND MOTHER'S MOVE TO TEXAS IS NOT A CHANGE IN CIRCUMSTANCES IN ITSELF.

{¶46} "III. THE TRIAL COURT ERRED BY FINDING [MOTHER] IN CONTEMPT FOR THE MOVE TO TEXAS DUE TO THE 'EMERGENCY' LANGUAGE IN THE NOVEMBER 1, 2019 ENTRY, BECAUSE THERE WAS NO SHOWING OF AN INTENTIONAL DISOBEDIANCE OF A COURT ORDER, AND BECAUSE SHE WAS NOT SERVED WITH THE MOTION FOR CONTEMPT.

{¶47} "IV. THE TRIAL COURT ABUSED ITS DISCRETION BY ORDERING AN ATTORNEY ADVOCATE FOR THE CHILD, BUT NOT ALLOWING THE CHILD'S ATTORNEY TO FILE A REPORT, ISSUE FINDINGS AND CONCLUSIONS, A WRITTEN CLOSING ARGUMENT, OR TO TESTIFY ON BEHALF OF THE CHILD.

{¶48} "V. THE TRIAL COURT ABUSED ITS DISCRETION IN ORDERING [MOTHER] TO PAY BOTH THE GAL FEES AND ALL OF THE FEES FOR THE CHILD'S ATTORNEY.

{¶49} "VI. THE TRIAL COURT ABUSED ITS DISCRETION IN ORDERING, AFTER THE HEARINGS, TO HAVE THE PARTIES HAVE A MENTAL HEALTH EVALUATION AND TO FILE THE RESULTS ONTO THE PUBLIC RECORD IN VIOLATION OF MEDICAL PRIVILEGE; AND TO HAVE THE PARTIES ATTEND COPARENTING COUNSELING FOR A CHILD THAT IS ALMOST EIGHTEEN AND WHERE THERE IS A HISTORY OF DOMESTIC VIOLENCE BY [FATHER]."

{¶50} Father assigns the following as error:

{¶51} "I. THE TRIAL COURT ERRED BY CONSIDERING [MOTHER'S] OBJECTIONS TO THE MAGISTRATE'S DECISION FILED APRIL 28, 2021 AND THE MAGISTRATE'S DECISION FILED MAY 17, 2021 AS [MOTHER] FAILED TO TIMELY FILE HER OBJECTIONS PURSUANT TO OHIO CIVIL RULE 53(D)(3)(b); THEREFORE

[MOTHER'S] OBJECTIONS TO BOTH MAGISTRATE'S DECISIONS SHOULD HAVE BEEN OVERRULED.

{¶52} "II. THE TRIAL COURT ERRED WHEN IT FAILED TO CONSIDER [FATHER'S] OBJECTIONS TO THE MAGISTRATE'S DECISION ON THE BASIS THAT [FATHER'S] OBJECTIONS WERE NOT TIMELY FILED PURSUANT TO OHIO CIVIL RULE 53(D)(3)(b); AND THEREFORE, THE TRIAL COURT SHOULD HAVE CONSIDERED [FATHER'S] OBJECTIONS AND RULED ON SUCH, AS SUCH WERE TIMELY FILED IN ACCORDANCE WITH OHIO CIVIL RULE 53(D)(3)(b).

{¶53} "III. THE TRIAL COURT ERRED WHEN IT RULED THAT [FATHER'S] AWARD FOR ATTORNEY FEES WOULD NOT BE ALLOWED ON THE BASIS THAT APPELLEE WAS NOT QUALIFIED TO ATTEST TO THE REASONABLENESS OF THE ATTORNEY FEES TO BE AWARDED, AND INSTEAD INDICATED THAT THE PROPER PROCEDURE REQUIRED THE TESTIMONY OF AN ATTORNEY REGARDING THE REASONBLENESS OF ATTORNEY FEES; AND, THEREFORE, NOT ORDERING AN AWARD OF ATTORNEY FEES UPON THE FINDING OF CONTEMPT AS REQUIRED BY SECTION 3109.051(K) OF THE OHIO REVISED CODE.

{¶54} "IV. THE TRIAL COURT ERRED WHEN IT FAILED TO AWARD [FATHER] ATTORNEY FEES UPON THE FINDING OF CONTEMPT AS REQUIRED BY SECTION 3109.051(K) OF THE OHIO REVISED CODE.

{¶55} "V. THE TRIAL COURT ERRED IN FAILING TO CORRECT CLEAR MISTAKES IN THE CHILD SUPPORT ORDER UPON ITS DE NOVO REVIEW DESPITE ITS RULING THAT [FATHER] FAILED TO TIMELY FILE HIS OBJECTIONS TO THE MAGISTRATE'S DECISION."

*Standard of Review*

{¶56}  Our standard of review in assessing the disposition of child custody matters is that of abuse of discretion.  *Miller v. Miller*, 37 Ohio St.3d 71, 523 N.E.2d 846 (1988). Furthermore, as an appellate court reviewing evidence in custody matters, we do not function as fact finders; we neither weigh the evidence nor judge the credibility of the witnesses.  *Id.*  Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base his or her judgment.  *Dinger v. Dinger*, 5th Dist. Stark No. 2001 CA 00039, 2001-Ohio-1386.  The trial court "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proferred testimony."  *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984).  Deferential review in a child custody determination is especially crucial "where there may be much evidence by the parties' demeanor and attitude that does not translate to the record well."  *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997).

*Mother's Assignments of Error*

I.

{¶57}  In her first assignment of error, Mother argues the trial court committed error in refusing to honor A.J.'s wishes to live with Mother in Texas.

{¶58}  Mother first contends that R.C. 3109.04(B)(2)(2) requires that, if there is a child interview and the trial court determines the child is mature enough, the trial court must comply with the child's wishes absent "special circumstances."  We disagree with Mother's interpretation of the statute.  R.C. 3109.04(B)(1) provides that in any proceeding for modification of a prior order of the court making an allocation of parental rights, the

"court shall take into account that which would be in the best interest of the child." Further, that, "in determining the child's best interest * * * the court * * * shall interview in chambers any or all of the involved children regarding their wishes and concerns with respect to the allocation." R.C. 3109.04(B)(2) states that, if the court interviews the child for best interest purposes, section (B)(2)(b) applies. R.C. 3109.04(B)(2)(b) provides as follows:

> The court first shall determine the reasoning ability of the child. If the court determines that the child does not have sufficient reasoning ability to express the child's wishes and concern with respect to the allocation of parental rights and responsibilities for the care of the child, it shall not determine the child's wishes and concerns with respect to the allocation. If the court determines that the child has sufficient reasoning ability to express the child's wishes or concerns with respect to the allocation, it then shall determine whether, because of special circumstances, it would not be in the best interest of the child to determine the child's wishes and concerns with respect to the allocation. If the court determines that, because of special circumstances, it would not be in the best interest of the child to determine the child's wishes and concerns with respect to the allocation, it shall not determine the child's wishes and concerns with respect to the allocation and shall enter its written findings of fact and opinion in the journal. If the court determines that it would be in the best interests of the child to determine the child's wishes and concerns with respect to the allocation, it shall proceed to make that determination.

**{¶59}** Pursuant to the plain language of the statute, the "special circumstances" language clearly applies to a situation where, despite a child having sufficient reasoning ability to express his or her wishes, due to "special circumstances," it would not be in the best interest of the child to *determine* the child's wishes. Here, the magistrate and trial court held multiple interviews with the child, and determined her wishes were to move to Texas with Mother. However, simply because R.C. 3109.04(B)(2)(b) states the trial court must determine the child's wishes does not mean that is the end of the inquiry. There is a clear distinction in the statute between *determining* the wishes and concerns of the child and *following* the wishes and concerns of the child. *Schottenstein v. Schottenstein*, 2001-Ohio-3987, 10th Dist. Franklin Nos. 00AP-1088, 01AP-94, 00AP-1284, 01AP-95, 01AP-36, 01AP-227, appeal dismissed, 98 Ohio St.3d 1210, 2003-Ohio-1088, 784 N.E.2d 1182; *In the Matter of Haley*, 3rd Dist. Hancock No. 5-92-5, 1992 WL 209309 (a child is not the sole determiner of who he lives with; the trial court must determine the child's wishes and concerns in conjunction with the child's best interest; a trial court can deny the wishes of the child when conditions indicate it is not in the best interest of the child); *In re R.L.S.*, 12th Dist. Warren No. CA2013-12-117, 2014-Ohio-3294 (even if a child is competent, a child's wishes and concerns is one factor among a number of factors in determining custody and is not dispositive of a custody determination).

**{¶60}** Rather, the trial court must determine what is in the best interest of the child, as R.C. 3109.04(E) requires the court to find a change in circumstances, to find the advantages outweigh the harm, *and* to find that modification is necessary to serve the best interest of the child. That is precisely what the magistrate and trial court did in this case. *Thompson v. Thompson*, 5th Dist. Stark No. 2018CA00074, 2019-Ohio-274 (if a

change in circumstances is established, the trial court must weigh the best interest of the child pursuant to the factors in R.C. 3109.04(F) before modifying a residential-parent designation). The magistrate and trial court did not place as much weight as Mother contends they should have on the child's wishes. However, the magistrate and trial court specifically explained their reasoning for this, i.e., because the child's wishes did not seem authentic and the child seemed coached by Mother. As this Court has stated, the wishes of the child are merely one factor in the best interest of the child determination and "clearly it is not the controlling factor and should not be the only factor upon which a trial court bases its decision." *B.S. v. M.M.*, 5th Dist. Stark No. 2020 CA 00111, 2021-Ohio-176.

{¶61} Mother also argues that R.C. 3109.04(B)(2)(b) specifically applies in situations where there is abuse. There is no language in R.C. 3109.04(B)(2)(b) regarding abuse. Further, we find no abuse of discretion in the trial court's determination that Mother failed to establish Father abused the child. Harper testified that A.J. is not in danger around Father. Officer Wiseman is not concerned about Father's actions. The paternal grandmother, who resides with Father, has never seen Father be physically or emotionally violent with the child. The GAL has no concerns about the child in Father's care, and testified it is in the child's best interest for him to be named the residential parent for school purposes. As noted by the trial court, the incidents cited by Mother are incidents during which Father's actions were the result of the child slapping him in the face while driving and the child hitting Father in the chest and scratching his face.

{¶62} Mother contends that this Court has "consistently and recently held" where a child is of sufficient age and reasoning ability, the child's wishes are sufficient to determine custody. We disagree. In the first case cited by Mother, *B.S. v. M.M.*, we

specifically stated that the wishes of the child are merely one factor in the best interest of the child determination and "clearly it is not the controlling factor and should not be the only factor upon which a trial court bases its decision." *B.S. v. M.M.*, 5th Dist. Stark No. 2020 CA 00111, 2021-Ohio-176. Similarly, in the other cases cited by Mother, we held that the wishes of the child constitute merely one factor that a trial court must consider in determining the best interest of the child. *Thompson v. Thompson*, 5th Dist. Stark No. 2018-CA-00074, 2019-Ohio-274; *B.C. v. S.D.*, 5th Dist. Licking No. 2021-CA-00027, 2021-Ohio-2963.

{¶63} Upon review, we find the magistrate set forth each factor contained in R.C. 3109.04(F) and analyzed each of the factors with regard to the evidence and testimony provided in the case. We find there is competent and credible evidence to support the magistrate's conclusions with regard to these factors. Although Mother provided contrary testimony to several of the statutory best-interests factors, we defer to the trial court's interpretation and weight of the evidence, as it observed first-hand witnesses and their demeanor. *Wright v. Wright*, 5th Dist. Stark No. 2012CA00232, 2013-Ohio-4138. No one factor is dispositive of the child's best interest and the court has discretion to weigh the factors. *B.S. v. M.M.*, 5th Dist. Stark No. 2020 CA 00111, 2021-Ohio-176.

{¶64} We find no abuse of discretion in the trial court's conclusion it was in the best interest of the child to grant shared parenting to Mother and Father, with both parents being designated residential parents and legal custodians of the minor child, and Father being designated the school placement parent for the child. Mother's first assignment of error is overruled.

II.

{¶65} In her second assignment of error, Mother argues the trial court committed error in finding a change in circumstances because a move alone is not sufficient to demonstrate a change in circumstances.

{¶66} The statute creates a strong presumption in favor of retaining the residential parent designation. Accordingly, a court must find all of the following when modifying a prior parental rights and responsibilities decree pursuant to R.C. 3109.04(E)(1): (1) an initial threshold showing a change in circumstances; (2) if circumstances have changed, the modification of custody must be in the child's best interest; and (3) any harm to the child from a modification of the plan must be outweighed by the advantage of such modification. R.C. 3109.04(E)(a)(1).

{¶67} "The purpose of requiring a finding of a change in circumstances is to prevent a constant re-litigation of issues that have already been determined by the trial court." *Brammer v. Brammer*, 194 Ohio App.3d 240, 2011-Ohio-2610, 955 N.E.2d 453 (3rd Dist.). R.C. 3109.04 does not define the concept of "change in circumstances." However, Ohio courts have held the phrase is intended to denote "an event, occurrence, or situation which has a material and adverse effect upon a child." *Wyss v. Wyss*, 3 Ohio App.3d 412, 445 N.E.2d 1153 (10th Dist. 1982). The change of circumstances must be "one of substance, not a slight or inconsequential change." *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997). However, the change need not be substantial. *Id.*

{¶68} Relocation alone is not sufficient to constitute a change in circumstances, but may be a factor in such determination. *Thompson v. Thompson*, 5th Dist. Stark No. 2012CA00176, 2013-Ohio-2587. Despite Mother's assertion, Mother's relocation was not

the only reason the trial court found a change in circumstances.  Rather, the trial court set forth several bases to support its finding, as follows:  Mother's relocation to Texas, the number of school districts A.J. attended (seven by the time she entered high school), lack of stability, multiple unexcused absences at school while Mother was the residential parent, and poor grades the past two years while Mother was the residential parent.

{¶69}  Upon review, we find the trial court did not abuse its discretion in finding a change in circumstances.  As noted above, the trial court is "best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proferred testimony."  *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984).  Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base his or her judgment.  *Dinger v. Dinger*, 5th Dist. Stark No. 2001 CA 00039, 2001-Ohio-1386.

{¶70}  We find there is competent and credible evidence upon which the fact finder could base her judgment as to a change in circumstances.  Father and the GAL both testified, and the exhibits demonstrated, that A.J.'s grades the last several years were poor.  Both Father and the GAL testified to A.J.'s excessive unexcused absences.  Further, there is no dispute that A.J. attended seven different school districts as of the date she entered high school.  While Mother does not believe this harmed the child in any way, Father testified this lack of stability has impacted A.J.  Further, the GAL testified that A.J. needs stability in her life, which Mother cannot provide.  The GAL specifically asked Mother to stop moving school districts, to no avail.

**{¶71}** Taking into consideration the various circumstances, including the poor attendance of the child at school, the child's poor grades, the lack of stability due to constant changing of school districts, and Mother's relocation to Texas, we find there is no abuse of discretion in the trial court's determination of a change in circumstances.

**{¶72}** Mother contends that since she did not move until after Father filed his motion for reallocation, the move cannot be considered in the change of circumstances decision. We disagree. We have held that, "in general courts review motions to modify orders based upon the circumstance as it existed at the time of the filing of the motion * * * however, if necessary, in determining a change of circumstances, a domestic relations court may consider developments that occurred after the motion was filed." *Sims v. Durant*, 5th Dist. Fairfield No. 2008-CA-27, 2008-Ohio-6442; *Hagan v. Hagan*, 5th Dist. Delaware No. 18 CAF 03 0030, 2019-Ohio-51; *Dyer v. Gomez*, 7th Dist. Noble No. 21 NO 0484, 2022-Ohio-1127. We rationalized that, "if a court could not consider events as they continued to unfold once a custody motion is filed, the trial court would be perpetually re-addressing new filings alleging a change in circumstances due to the inevitable passage of time between the filing of the original custody motion and the date of the hearing on the motion." *Hagan v. Hagan*, 5th Dist. Delaware No. 18 CAF 03 0030, 2019-Ohio-51. We find no abuse in the discretion in the trial court taking into consideration Mother's move, particularly since Mother moved the child's school district in violation of a court order, between the time the hearing was held and the magistrate's decision was issued, with no notice to Father or the court until after the moved was completed. The move was thoroughly discussed and argued at the December hearing, and was again argued at the February hearings. Mother's second assignment of error is overruled.

III.

**{¶73}** Father filed several motions for contempt during the pendency of this case. The trial court found Mother in contempt for moving to Texas in violation of a court order and in willfully interfering with Father and A.J.'s counseling.   In her third assignment of error, Mother argues the trial court committed error in finding her in contempt.

**{¶74}** Our standard of review regarding a finding of contempt is limited to a determination of whether the trial court abused its discretion.   *Sloat v. James*, 5th Dist. Stark No. 2008 CA 00048, 2009-Ohio-2849.   In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).   The burden of proof in a civil contempt action is proof by clear and convincing evidence.   *Sloat v. James*, 5th Dist. Stark No. 2008 CA 00048, 2009-Ohio-2849.   The determination of "clear and convincing evidence" is within the discretion of the trier of fact.   *Id.*   The trial court's decision should not be disturbed as against the manifest weight of the evidence if the decision is supported by some competent and credible evidence.   *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).   A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidenced submitted before the trial court.   *Geary v. Geary*, 5th Dist. Delaware No. 14CAF050033, 2015-Ohio-259.

**{¶75}** Mother contends the trial court abused its discretion in finding her in contempt for the move to Texas, as Mother believes the move was an "emergency" pursuant to the court's previous order.   The court order at issue is dated November 1, 2019, and states, "the minor child shall remain in Granville School District.   The minor

child shall not move to any alternative school district absent a specific order of the court. Absent an emergency, any motion to change school district shall be filed by May 1. The Court finds that if Mother facilitates a change without a court order it shall be grounds for Father to be deemed residential parent for school placement purposes."

**{¶76}** We find the trial court did not abuse its discretion in finding Mother in contempt. After considering Mother's testimony, the trial court did not find her explanation for her non-compliance with the court's order to qualify as an emergency. The trial court noted that Mother had several family members with homes in Licking County, and that Mother did not testify to what efforts she made to remain in Ohio pending the decision of the magistrate, but instead had made up her mind to move to Texas and created the "emergency." The trial court, as the trier of fact, "is the sole judge of the weight of the evidence and the credibility of the witnesses." *McKay Machine Co. v. Rodman*, 11 Ohio St.2d 77, 228 N.E.2d 304 (1967). We do not find the trial court's decision to be arbitrary, unconscionable, or unreasonable.

**{¶77}** Mother additionally argues the contempt is an abuse of discretion because she was not served with the motion for contempt for the move to Texas. Mother suggests that since the return certified mail form was signed by an "agent," the service was not sufficient. Mother cites no legal authority for this proposition.

**{¶78}** The Ohio Civil Rules regarding notice apply when the contempt is civil in nature. *Bierce v. Howell*, 5th Dist. Delaware No. 06 CAF 05 0032, 2007-Ohio-3050. Civil Rule 75(J) provides for the continuing jurisdiction of a court in divorce cases, and provides, "notice of which shall be served in the manner provided for the service of process under Civ. R. 4 to 4.6." Civil Rule 4.3 provides the clerk may serve an individual

out-of-state in the same manner as provided in Civil Rule 4.1(A)(1) through Civil Rule 4.1(A)(3). Pursuant to Civil Rule 4.1(A), service of process via certified mail is "evidenced by return receipt signed by any person." The certified mail return receipt is signed in this case and was delivered to the address Mother provided in her notice of change of address. Civil Rule 4.1(A) "does not require that delivery is restricted to the defendant or to a person authorized to receive service of process on the defendant's behalf. When service is attempted by certified mail, a signed receipt returned to the sender establishes a prima facie case of delivery to the addressee." *TCC Mgt., Inc. v. Clapp*, 10th Dist. Franklin No. 05AP-42, 2005-Ohio-4357. Further, "valid service of process is presumed when any person at the defendant's address received the certified mail envelope." *Id.; Progressive Direct Ins. Co. v Williams*, 3rd Dist. Marion No. 9-21-26, 2022-Ohio-887.

**{¶79}** "Courts will presume service to be proper in cases where the civil rules are followed unless the defendant rebuts the presumption by sufficient evidence." *State ex rel. Fairfield County CSEA v. Landis*, 5th Dist. Fairfield No. 2002 CA 00014, 2002-Ohio-5432. The certified mail return receipt creates a rebuttable presumption that proper service was perfected. Upon this record, we find Mother has offered no evidence, other than the arguments in her brief, to rebut the presumption that service of the motion was perfected.

**{¶80}** Additionally, assuming arguendo there was an issue with the service of the contempt motion, we find Mother waived this issue. At the hearings on February 4 and February 8, Mother made no objection to the contempt motion based on a lack of personal service. Counsel for Mother elicited her testimony about the contempt motion on direct examination, and specifically asked her whether she intended to violate the November

2019 court order. Further, she presented her defense to the motion for contempt at the hearing, i.e. that the move to Texas was an emergency. Counsel for Father cross-examined her on the issue. Mother answered questions on both direct and cross-examination regarding the contempt issue without objecting as to the lack of service. "Where a party appears in court, fails to object to proper service pursuant to Civil Rule 75(J), and defends on the merits of the case, that party will be deemed to have waived the issue of improper service." *Smith v. Smith*, 4th Dist. Hocking No. 18CA11, 2019-Ohio-899; *Donlon v. Lineback*, 12th Dist. Warren Nos. CA2016-03-015, CA2016-03-016, 2016-Ohio-7739 (parties litigated contempt motion without raising lack of service, so waived insufficient service argument); *Shankle v. Egner*, 5th Dist. Stark Nos. 2011 CA 00121, 2011 CA 00143, 2012-Ohio-2027 (evidence in case that appellant received summons and complaint because she telephoned counsel upon receipt). Mother failed to object to proper service and actually defended on the contempt issue; accordingly, we find the trial court did not commit error in finding Mother in contempt.

{¶81} Mother makes a cursory argument about the contempt issued for her interference with counseling, arguing only that, "it is requested that the court reverse the court's finding of contempt regarding her alleged interference with visitation for waiting for [A.J.] in the car." We find no abuse of discretion in finding Mother in contempt for interference with counseling. Mother's counsel asked her on direct examination about contempt with regard to counseling and Mother denied any contempt. However, Harper described how Mother would sit in the driveway during the child's counseling sessions with Father, allowing the child to leave the sessions early, despite Harper asking Mother not to. Further, Mother delayed in signing the initial release and delayed in signing the

release for Harper to speak to A.J.'s individual counselor.  The trial court, as the trier of fact, "is the sole judge of the weight of the evidence and the credibility of the witnesses." *McKay Machine Co. v. Rodman*, 11 Ohio St.2d 77, 228 N.E.2d 304 (1967).  We do not find the trial court's decision to be arbitrary, unconscionable, or unreasonable.

{¶82}  Mother's third assignment of error is overruled.

IV.

{¶83}  In her fourth assignment of error, Mother contends the trial court abused its discretion in not allowing the child's attorney to file a report, issue findings of fact and conclusions of law, submit a written closing argument, or testify on behalf of the child. Attorney Stacy Jewell was appointed as independent counsel for the child at Mother's request.

{¶84}  We first note that we question whether Mother has standing to present this argument, as Attorney Jewell was appointed to represent the child, not Mother, and Attorney Jewell has not appealed the trial court's order.

{¶85}  However, even if Mother has standing to make this argument, we find the trial court did not abuse its discretion.  Despite Mother's claims, the magistrate did permit Attorney Jewell to file a written closing argument, findings of fact and conclusions of law, and a proposed long-distance visitation schedule.  In a December 7, 2020 magistrate's order, the magistrate stated, "Plaintiff, Defendant, and the Attorney for the minor child shall prepare the following within 14 days of this Magistrate's Order * * * written closing arguments not to exceed 5 pages; proposed findings of fact and conclusions of law; [and] a proposed long-distance visitation schedule."  Attorney Jewell chose not to submit these

items, perhaps as a cost-saving measure. She was not precluded from doing so by the magistrate or the trial court as Mother suggests.

{¶86} Mother next contends Attorney Jewell should have been permitted to file a report like a guardian ad litem. We first note that Attorney Jewell did not ask to file a report. Further, Mother cites no authority for the proposition that independent counsel should, or is permitted to, file a report with recommendations. A guardian ad litem is specifically tasked with filing a report with recommendations by Ohio Rules of Superintendence 48.06 and 48.03. No such rule exists for independent counsel appointed for a child, as a guardian ad litem and an attorney for the child serve two different roles.

{¶87} Finally, Mother argues the trial court abused its discretion in not permitting Attorney Jewell from testifying. Mother cites no authority for her argument. Attorney Jewell did not ask to testify and Mother did not call Attorney Jewell as a witness. Additionally, as noted by the trial court, it is not the role of an attorney to provide testimony to the court. This ruling complies with Ohio Professional Rule of Conduct 3.7(a).

{¶88} During the hearing on December 4, 2020, and the hearings on February 4 and February 8, 2021, Attorney Jewell attended the hearings, and cross-examined each witness. Attorney Jewell made it clear through her cross-examination of each witness what the child's position was, i.e., that she wanted to move to Texas, and advocated in accordance with the child's wishes. Further, Attorney Jewell attended the in-camera interview the court held with the child, and made sure A.J.'s wishes were known to the court during the interview. See *In re Spears*, 5th Dist. Fairfield Nos. 05CA7, 05CA8, 05CA9, 05CA10, 2005-Ohio-4498. Mother's fourth assignment of error is overruled.

V.

{¶89} In her fifth assignment of error, Mother contends the trial court abused its discretion in ordering Mother to pay half of the GAL fees and all of the fees for A.J.'s independent counsel. We disagree.

{¶90} Civil Rule 75(B)(2) states, "* * * the court may * * * appoint a guardian ad litem and legal counsel, if necessary, for the child and tax the costs." The trial court has discretion over the amount of GAL fees, as well as the allocation to either or both of the parties. *Karales v. Karales*, 10th Dist. Franklin No. 05AP-856, 2006-Ohio-2964. We review an award of GAL fees and other litigation expenses under an abuse of discretion standard. *In re S.B.*, 11th Dist. Ashtabula No. 2010-A-0019, 2011-Ohio-1162.

{¶91} Mother suggests that because the GAL was "acting on behalf" of Father, Father should have to pay all of the GAL fees. We disagree with Mother's assertion that the GAL was "acting on behalf" of Father. Rather, the GAL compiled a thorough report and gave detailed testimony. Simply because the GAL did not give the recommendation Mother wanted does not mean the GAL was not impartial or not in compliance with her duties pursuant to the Ohio Rules of Superintendence. The lack of the GAL's bias is evident from the fact that in both her 2017 and 2019 reports, the GAL recommended Mother remain the residential parent, and the fact that the GAL recommended shared parenting if Mother remained in Ohio. The GAL complied with Ohio Rules of Superintendence, including providing the court a recommendation of the best interest of the child, maintaining objectivity and fairness, acting with respect and courtesy, and attending hearings. The Ohio Rules of Superintendence specifically recognize that, "recommendations of the best interest of the child may be inconsistent with the wishes of

the child whose interest the guardian ad litem represents or other parties." Rule 48.03(A)(1). We find no abuse of discretion in the trial court dividing the GAL fees equally in this case.

**{¶92}** We further find the trial court did not abuse its discretion in ordering Mother to pay 100% of the fees for A.J.'s independent counsel. On September 8, 2020, Mother made a motion to appoint an attorney advocate for A.J. Father opposed the motion, citing the extra expense since the parties involved were aware of A.J.'s opinion and desire to move to Texas. The court granted Mother's motion and appointed Attorney Jewell. Attorney Jewell attended the hearings, cross-examined each witness, and made appropriate motions. She made sure A.J. was allowed to express her clear preference to move to Texas with Mother.

**{¶93}** Mother's fifth assignment of error is overruled.

VI.

**{¶94}** In her sixth assignment of error, Mother argues the trial court abused its discretion in ordering the parties to have a mental health evaluation and in ordering the parties to engage in counseling. Subsequently, Mother filed a notice to dismiss the first portion of her argument because the trial court sustained her objection as to the mental health evaluation and found the parties did not have to undergo a mental health evaluation.

**{¶95}** Accordingly, the only issue remaining in Mother's sixth assignment of error is the order for the parties to participate in co-parenting counseling. We review matters relating to the allocation of parental rights and responsibilities for an abuse of discretion. Mother fails to demonstrate how the trial court acted in an unreasonable, unconscionable,

and arbitrary manner in ordering the parties to attend co-parenting counseling. It is clear from the record that Mother and Father have serious difficulty in communicating with each other regarding A.J., despite the necessity to do so because of the distance between them. This is reinforced by the GAL's testimony.

**{¶96}** In his brief, Father states he does not oppose Mother's request, and asks this Court to issue an order terminating the counseling. We decline to do so, as our role as an appellate court is only to review whether the trial court's order for counseling is an abuse of discretion. The trial court specifically stated in its judgment entry that the parties could mutually agree to discontinue the counseling. The parties should file a notice with the trial court that they have mutually agreed to discontinue the co-parenting counseling. Mother's sixth assignment of error is overruled.

*Father's Appeal*

I.

**{¶97}** In his first assignment of error, Father argues the trial court committed error in considering Mother's objections to the magistrate's opinion. Father contends that a party cannot file a motion for extension of time to file objections, but instead has to file objections and supplement them later. We disagree.

**{¶98}** Civil Rule 53(D)(3)(b)(i) provides, "a party may file written objections to a magistrate's decision within fourteen days of the filing of the decision." However, Civil Rule 53(D)(3)(b)(5) provides, "for good cause shown, the court shall allow a reasonable extension of time for a party to file * * * objections to a magistrate's decision. 'Good cause' includes, but is not limited to, a failure by the clerk to timely serve the party seeking the extension with the magistrate's order or decision." Civil Rule 53(D)(5) does not define

"good cause," other than stating it includes, but is not limited to, where the clerk fails to timely serve a party. The determination of what constitutes good cause is determined on a case-by-case basis. *White v. Grange Ins. Co.* 2nd Dist. Montgomery No. 29151, 2022-Ohio-497; *Churchill v. Churchill*, 6th Dist. Erie No. E-21-023, 2022-Ohio-1530. A trial court has discretion to determine whether to grant a motion for extension of time, and this Court will not reverse that decision absent an abuse of discretion. *Id.*

{¶99} Father cites this Court's case of *Falvey v. Falvey* in support of his argument. However, in that case, we did not issue a bright-line rule that a party cannot file, and a trial court cannot grant, a motion for extension to file objections. 5th Dist. Fairfield No. 09-CA-0061, 2010-Ohio-2144. Rather, we held that while Civil Rule 53(D)(5) provides for an extension to file objections for "good cause," the trial court in the *Falvey* case did not abuse its discretion in finding the appellant did not demonstrate good cause as to why objections could not be filed within the fourteen-day time period.

{¶100} We find the trial court did not abuse its discretion in granting Mother's motion for extension to file objections, and in considering her objections to the magistrate's decision in this case. See *Greene v. Greene*, 5th Dist. Licking No. 07 CA 87, 2008-Ohio-2829 (trial court acted within the parameters of its authority and granting two extensions to file objections). Father's first assignment of error is overruled.

## II. & V.

{¶101} In Father's second assignment of error, he contends the trial court committed error in finding his objections untimely. In Father's fifth assignment of error, he argues that, even if his objections were untimely, the trial court committed error because there were several clear errors in the child support calculation.

{¶102} In support of his second assignment of error, Father cites Civil Rule 53(D)(3)(b)(i), which provides, "if any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed." Father reasons that Mother's motion for extension of time to file objections permitted him to file objections until ten days after that date. We have previously held that, when a party timely files objections within the fourteen-day period, the other party has ten days after that date to file objections. *Canton Asphalt Co. v. Fosnaught*, 5th Dist. Stark Nos. 2010 CA 00201, 2010 CA 00202, 2011-Ohio-1329; *In the Matter of K.D.*, 5th Dist. Licking No. 18 CA 0026, 2018-Ohio-3454. However, the facts in this case are distinguishable because the issue in this case is whether Mother's motion for extension qualifies as a "timely objection" pursuant to Civil Rule 53(D)(3)(b)(i). Father cites no authority other than the language contained in Civil Rule 53(D) for his argument that he is entitled to file his objections ten days from a motion for extension, and it appears this Court has not previously ruled on the issue.

{¶103} However, we find it is not necessary to decide whether a motion for extension or a granting of a motion for extension qualifies as a "timely objection," because the three errors Father cites in his brief are defects evident on the face of the magistrate's decision which prohibit the adoption of the magistrate's decision on that issue, even in the absence of objections, pursuant to Civil Rule 53(D)(3)(b)(iv). *Mott v. Morgan*, 5th Dist. Delaware No. 21 CAG 02 0011, 2021-Ohio-3026.

{¶104} First, on the child support worksheet, Mother is credited with having a minor child other than A.J., which reduced her income for child support purposes. However, during the December hearing, counsel for Mother stipulated that "there's no other minor

children and no daycare" (T. at p. 241). Additionally, in Mother's "information for child support worksheet," filed on December 21, 2020, Mother states, "Plaintiff has no other minor children." Second, pursuant to the shared parenting plan adopted by the trial court, Mother has parenting time for Spring Break, six weeks in the summer, three days at Thanksgiving, and one week at Christmas. It is clear this is less than 90 overnights per year. However, on the child support worksheet, the trial court gave Mother a 10% reduction on the basis that Mother had the child ninety or more overnights per year. Third, the magistrate listed Mother's annual gross income at $28,464 per year. However, the paystubs attached to Mother's information for child support filed on December 21, 2020 show that Mother earned $18 per year and worked from 36 to 40 hours per week. At the February hearing, Mother testified she works 40 hours a week at $16 per hour. At the lowest of these undisputed figures, Mother's gross yearly income is $33,280, not $28,464 in the worksheet prepared by the magistrate.

{¶105} Based on the undisputed evidence, we find the trial court committed error in these three lines of the child support worksheet. Father's second and fifth assignments of error are sustained in part.

III.

{¶106} In his third assignment of error, Father contends the trial court committed error and requests this Court reinstate the attorney fee award issued by the magistrate. Father contends that his affidavit and/or the inherent knowledge of the court was sufficient to determine the reasonableness of the fees.

{¶107} Pursuant to R.C. 3109.73(B) and/or R.C. 2705.02, an award of attorney fees is in within the sound discretion of the trial court. "While the trial court has discretion in

determining the amount of attorney fees, the court must base its decision on evidence showing the reasonableness of the time spent on the matter and the hourly rate." *Almasoodi v. J. Harris Constr., Inc.*, 5th Dist. Delaware No. 22 CAE 06 0053, 2023-Ohio-895.

{¶108} Father cites our holding that, "where the amount of an attorney's time and work is evident to the trier of fact, an award of attorney fees, even in the absence of specific evidence to support the amount, is not an abuse of discretion," in support of his argument. *Hawk v. Hawk*, 5th Dist. Tuscarawas No. 2002AP040024, 2002-Ohio-4384; *Bosch v. Bosch*, 5th Dist. Fairfield No. 21 CA 3, 2021-Ohio-2649; *Dotts v. Schaefer*, 5th Dist. Tuscarawas No. 2014 AP 06 0022, 2015-Ohio-782. He contends that the amount of his attorney's time and work should have been evident to the trier of fact, and that the trial court abused its discretion in not accepting Father's affidavit. While this Court has held that a court may rely upon its own knowledge in the determination of attorney fees, we have not mandated that a trial court do so. It is within the trial court's discretion. We find the trial court did not abuse its discretion in this case when it determined it was more appropriate to require more than its own knowledge to determine the reasonableness of the attorney fees. The line of cases cited by Father do not mandate that a trial court utilize its own knowledge and experience to determine the reasonableness of attorney fees. Rather, they are cases in which we held it was not an abuse of the court's discretion to do so in those particular factual situations.

{¶109} As to Father's argument about his own affidavit, Father asserts the line of cases as cited above holds that a court must accept the testimony or affidavit of the client as to the reasonableness of attorney fees. However, we have not issued such a bright-

line rule. Rather, we held that a trial court may, in its discretion, accept a client's testimony or affidavit concerning the reasonableness of the fees. We have not held that a trial court is required to accept a client's testimony or affidavit as to the reasonableness of the fees. Ultimately, the trier of fact has (1) the discretion to award attorney fees or not award attorney fees and (2) the discretion to decide on evidence showing the reasonableness of the time spent on the matter and the hourly rate. A trial court may believe all, part, or none of the testimony of any witness who appears before it. *Rogers v. Hill*, 124 Ohio App.3d 468, 706 N.E.2d 438 (4th Dist. 1998).

**{¶110}** We find no abuse of the trial court's determination that Father's affidavit was insufficient to demonstrate the reasonableness of the attorney fees in this case, particularly where Mother was not given the opportunity to challenge the affidavit prior to the magistrate issuing her decision and where Father averred that attorney fees of over $7,500 was reasonable for two contempt motions.

**{¶111}** Finally, Father argues since he complied with the request of the magistrate at the conclusion of trial, his assignment of error should be sustained. However, the magistrate specifically requested that Father's counsel submit a supporting affidavit. The only affidavit filed was that of Father, not his counsel.

**{¶112}** In this assignment of error, Father also argues the trial court committed error in denying attorney fees due to the language of R.C. 3109.051(K). Because Father has also assigned this as a separate assignment of error, we review this argument in Father's Fourth Assignment of Error.

**{¶113}** Father's third assignment of error is overruled.

IV.

{¶114} In Father's fourth assignment of error, he contends the trial court abused its discretion in denying him attorney fees for Mother's contempt because R.C. 3109.051(K) mandates an award of attorney fees.

{¶115} While we agree with Father that R.C. 3109.051(K) requires an award of reasonable attorney fees due to the use of the word "shall," we find there is no indication the trial court utilized R.C. 3109.051(K) in its contempt determination. The trial court found Mother in contempt for a violation of its previous order and for interfering with counseling. In the motions Father filed for contempt with regard to these two issues, he does not cite R.C. 3109.051(K). Additionally, R.C. 3109.051(K) specifically applies to orders granting parenting time rights, i.e., parenting time or visitation, and Mother was not found in contempt for issues regarding Father's parenting time or visitation, as the child was returned to Ohio by the time Father's next visit was to occur. Finally, the only revised code section cited by either the magistrate or trial court with regard to attorney fees is R.C. 2705. "A trial court has authority both under R.C. 2705.02(A) and on the basis of its inherent powers to punish the disobedience of its orders with contempt proceedings." *Zakany v. Zakany*, 9 Ohio St.3d 192, 459 N.E.2d 870 (1984). In those situations, and when a trial court awards attorney fees pursuant to R.C. 3105.73(B), the award of attorney fees is in the trial court's discretion.

{¶116} Accordingly, we find the trial court did not abuse its discretion in declining to award fees pursuant to R.C. 3109.051(K) because that statute was not at issue in this case. Father's fourth assignment of error is overruled.

**{¶117}** Based on the foregoing, Mother's assignments of error are overruled. Father's first, third, and fourth assignments of error are overruled.  Father's second and fifth assignments of error are sustained in part.

**{¶118}** The April 8, 2022 judgment entry of the Perry County Court of Common Pleas is affirmed in part and reversed and remanded in part to correct the three errors contained in the child support worksheet as to Mother's income, the overnights per year, and Mother being given credit for an additional minor child.


By Gwin, P.J.,

Delaney, J., and

King, J., concur